**In the Matter of REINSTATEMENT of Kenneth Claude RHOADS to Membership in the Oklahoma Bar Association and to the Roll of Attorneys.**

**SCBD No. 4975.**

Supreme Court of Oklahoma.

June 28, 2005.

Mike Speegle, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, OK, attorney for Respondent, State of Oklahoma ex rel. Oklahoma Bar Association.

Chandra L. Holmes Ray, John P. Zelbst, John P. Zelbst Law Firm, Lawton, OK, attorneys for Petitioner.

WINCHESTER, V.C.J.

¶ 1 Petitioner sought reinstatement to The Oklahoma Bar Association and to the Roll of Attorneys pursuant to Rule 11, (Reinstatement), Rules Governing Disciplinary Proceedings (RGDP), 5 O.S.2001, Ch. 1, App. 1–A. The Trial Panel of the Professional Responsibility Tribunal recommended granting petitioner's reinstatement request, and the assessment of costs of this proceeding. After *de novo* review, we grant reinstatement.

### STANDARD OF REVIEW

¶ 2 This Court has exclusive original jurisdiction over Bar disciplinary matters. *State ex rel. Okl. Bar Ass'n. v. Donnelly*, 1992 OK 164, ¶ 11, 848 P.2d 543, 545. Our standard of review is *de novo*. *State ex rel. Okl. Bar Ass'n. v. Lloyd*, 1990 OK 14, ¶ 8, 787 P.2d 855, 858. Recommendations of the Professional Responsibility Tribunal trial panel are merely advisory. *Matter of Reinstatement of Kamins*, 1988 OK 32, ¶ 18, 752 P.2d 1125, 1129. We are not bound by the trial authority's findings nor its assessments as to weight or credibility of the evidence. *State ex rel. Okl. Bar Ass'n. v. Raskin*, 1982 OK 39, ¶ 11, 642 P.2d 262, 265. Indeed, a thorough and complete exploration of all relevant facts is mandatory in our *de novo* consideration of matters to regulate the practice of law and legal practitioners. *Tweedy v. Okl. Bar Ass'n.*, 1981 OK 12, ¶ 4, 624 P.2d 1049, 1052. At the outset, we hold the record is adequate for this Court's *de novo*

consideration of all essential facts, and for crafting the appropriate decision.

■ ¶ 3 Rule 10, Suspension for Personal Incapacity to Practice Law, codified at 5 O.S.2001, Ch. 1, App. 1–A Rule 10.1 provides in pertinent part:

"The term 'personally incapable of practicing law' shall include:

(a) Suffering from mental or physical illness of such character as to render the person afflicted incapable of managing himself, his affairs or the affairs of others with the integrity and competence requisite for the proper practice of law ..."

Petitioner herein bears the heavy burden of showing, by clear and convincing evidence, that reinstatement is warranted. *Matter of Reinstatement of Page,* 2004 OK 49, ¶ 2, 94 P.3d 80, 81. The instant case concerns an individual whom this Court has suspended from the practice of law for a period of longer than two (2) years, based upon his personal incapacity to practice law. As such, the applicant must present stronger proof of qualifications than one seeking admission to the OBA for the first time. Rule 11.4 (Standard of Proof for Petitions for Reinstatement), RGDP. We consider eight factors, in determining fitness for reinstatement. *Matter of Reinstatement of Gassaway,* 2002 OK 48, ¶ 3, 48 P.3d 805, 806. These factors are: 1) applicant's present moral fitness; 2)applicant's demonstrated consciousness of conduct's wrongfulness and the disrepute said conduct brought upon the legal profession; 3) extent of rehabilitation of applicant; 4) seriousness of the original misconduct; 5) applicant's conduct after suspension; 6) time elapsed since suspension; 7) applicant's character, maturity and experience at time of suspension; and 8) applicant's present legal competence. *Matter· of Reinstatement of Gassaway,* 2002 OK 48, ¶ 3, 48 P.3d 805, 806; *Matter of Reinstatement of Kamins,* 1988 OK 32, ¶ 20, 752 P.2d 1125, 1130. In our analysis of Petitioner's request for reinstatement, we must give foremost consideration to protecting the public welfare, and must determine that reinstatement would not adversely affect the Bar. *Matter of Reinstatement of Cantrell,* 1989 OK 165, ¶ 2, 785 P.2d 312, 313.

## Evidence and Analysis

■ ¶ 4 The facts that underlie Petitioner's suspension are undisputed, and are as follows. On August 5, 1998, Petitioner pointed and fired a shotgun while in the Van Hoozer Body Shop in Lawton, Oklahoma. Subsequently, Petitioner pled *nolo contendre* to a charge of Feloniously Pointing a Weapon. He paid the fine, made restitution for damages in the amount of $2,500.00 and completed all conditions of his five-year deferred sentence. On February 8, 1999, pursuant to a Rule 10 proceeding, we determined Petitioner was incapable of practicing law and suspended his license until further order of the Court. Petitioner's suspension was attributable to his mental incapacity. He was confined to Eastern State Hospital pursuant to an "Order for Examination and Observation" entered August 17, 1998, in the criminal proceeding. The hospital's initial report, dated August 27, 1998, stated that Petitioner suffered from a mental illness as defined in 43 O.S.Supp.1998, § 1–103. The report attributed the death of Petitioner's father as a contributing stressor to his behavior and concluded that if he were released without treatment, therapy or training he probably would pose a significant threat to his life and safety, as well as to the life and safety of others. Accordingly, an Order of Commitment was entered on October 2, 1998, to provide Petitioner treatment and therapy that would restore his competency. On October 28, 1998, a hospital psychologist advised the court that Petitioner's mood disorder appeared to be "successfully modulated with the administration of the present medications," thereby removing any threat to Petitioner's or others' life and safety.

¶ 5 In 2000, Petitioner filed for reinstatement. At the hearing, Douglas O. Brady, Ph.D., a clinical and consulting psychologist, testified Petitioner suffered from bipolar disorder, that was controllable through medication. He concluded that Petitioner was fit to practice law if he stayed on medication, continued to monitor blood levels and attended therapy. We denied the petition.

¶ 6 Since then, the record reflects that Petitioner has worked as a telemarketer and

a technician in a Lawton group home for adolescent boys. Currently, Petitioner is employed as a courier for the Oklahoma Blood Institute in Lawton, Oklahoma.

¶ 7 We again will consider the eight factors articulated in *Matter of Reinstatement of Gassaway*, 2002 OK 48, ¶ 3, 48 P.3d 805, 806, and *Matter of Reinstatement of Kamins*, 1988 OK 32, ¶ 20, 752 P.2d 1125, 1130, to determine Petitioner's fitness for reinstatement.

¶ 8 The first factor, Petitioner's present moral fitness, is no longer a matter of concern. The record supports a conclusion that Petitioner has not practiced law since 1998, and that his mental capacity has been restored. The testimony of Petitioner's treating doctor, Jenny L. Boyer, M.D., J.D., and of John A. Call, Ph.D., J.D., (both of whom were called by the OBA,) supports the statements and conclusions of Dr. Brady in 2000. Dr. Boyer testified Petitioner's behavior that resulted in his suspension was the result of his bipolar disorder and was triggered by his father's illness and subsequent death. She stated Petitioner took his medications consistently and that it was her opinion he would continue to do so. As long as Petitioner takes his medications, he does not present a danger to himself or the public. Dr. Call's testimony included the same observations and conclusions as Dr. Boyer's. Dr. Call also stated that Petitioner was involved in Lawyers Helping Lawyers and participated in an intervention of another lawyer, for which he was commended. He testified that Petitioner appreciated and understood the safeguards necessary to maintaining his good mental health. He concluded that Petitioner was competent to practice law. In addition, a judge, practicing attorneys and other individuals all testified as to Petitioner's good moral character and his remorse over the incident at the body shop. They confirmed his present competency as an attorney and stated he possessed excellent legal skills and a good reputation prior to the incident in August 1998. Accordingly, this factor weighs in favor of reinstatement.

¶ 9 The second factor, Petitioner's demonstrated consciousness of his conduct's wrongfulness and the disrepute said conduct brought upon the legal profession, similarly weighs in his favor. Petitioner took responsibility for his actions, paid the fine and made restitution, and took the steps necessary to maintain his good mental health. He expressed remorse and deep regret over the conduct that gave rise to his suspension.

¶ 10 The evidence before us establishes that Petitioner's behavior that resulted in his suspension stemmed from mental illness. As such, the third factor, the extent of Petitioner's rehabilitation, may be evaluated in view of his commitment to taking his medication and to participation in Lawyers Helping Lawyers. This factor weighs in his favor.

¶ 11 The fourth factor, the seriousness of the original misconduct, does not weigh in favor of Petitioner's reinstatement. However, we must temper the nature of his original misconduct with the testimony of Petitioner's physicians that said misconduct resulted from mental illness, triggered or exacerbated by his father's illness and subsequent death.

¶ 12 The fifth factor, Petitioner's conduct after suspension, weighs in favor of reinstatement. Petitioner has not engaged in the unauthorized practice of law during the period of his suspension, and has participated in Lawyers Helping Lawyers.

¶ 13 Significant time has elapsed since Petitioner's suspension in 1999. As such, we determine that the sixth factor weighs in favor of reinstatement.

¶ 14 The seventh factor concerns Petitioner's character, maturity and experience at the time of his suspension. At the time of his suspension in 1999, Petitioner had been licensed to practice law for eleven years. He was admitted to the Oklahoma Bar Association on May 6, 1988. Thus, it cannot be said that he lacked maturity or experience at the time. Indeed, one would expect those qualities to be evident after such a period of time as a licensed attorney. As to Petitioner's character at the time of his suspension, the record supports a conclusion that his character was undermined by his undiagnosed and untreated mental illness. Since the evidence before us supports a finding that Petitioner's mental illness is in remission, the seventh factor weighs in Petitioner's favor.

¶ 15 The eighth and final factor we must consider today involves Petitioner's present legal competence. The Trial Panel concluded, and we agree, that Petitioner possesses the competency and learning in the law that is required for admission to the OBA. Evidence established he attended continuing legal education courses and kept himself current as to recent developments in the law, all as required under Rule 11.5(c), (Findings prerequisite to reinstatement) RGDP. Accordingly, the eighth factor weighs in favor of Petitioner's reinstatement.

¶ 16 Additional evidence before us established that Petitioner cooperated with the OBA, doctors, employers and others. His then-fiancé, Angela Mallow, (the wedding date was in April 2005,) lived with Petitioner and testified about his state of mind when confronted with a situation similar to the illness and death of his father, that triggered his 1998 episode. During the time Petitioner was on medication for his bipolar disorder, his brother, Roger, died suddenly. Petitioner dealt with the stress of Roger's death appropriately, evidencing his commitment to lifelong medication and treatment.

¶ 17 Accordingly, upon our *de novo* review of the evidence before us in the instant matter, we hold that Petitioner's Petition for Reinstatement to the Roll of Attorneys and Membership in the Oklahoma Bar Association is hereby granted. We further direct Petitioner to remain involved in the Lawyers Helping Lawyers program for a period of no less than two years from the effective date of this opinion.

¶ 18 OBA's Application to Assess Costs contains a total of $3,284.41 in reimbursable costs associated with the instant matter. OBA is entitled to reimbursement pursuant to Rule 11.1(c), (Petition for reinstatement) RGDP and OBA's application is hereby granted. Petitioner requested a reasonable amount of time to pay said costs, pursuant to a payment plan, based on the fact that his employment at the Oklahoma Blood Institute as a courier paid $8.15 per hour. We direct OBA and Petitioner to reach a mutually satisfactory agreement for the repayment thereof. Costs to be assessed against Petitioner in the amount of $3,284.41 are to be paid within one year of the effective date of this opinion.

**PETITIONER'S REINSTATEMENT REQUEST GRANTED; PETITIONER ASSESSED COSTS OF PROCEEDINGS.**

CONCUR: WATT, C.J., LAVENDER, HARGRAVE, OPALA, KAUGER, EDMONDSON, COLBERT, JJ.

DISSENTS: TAYLOR, J.