2006 OK 14

**In the Matter of the REINSTATEMENT OF Elaine Ann MEEK, to Membership in the Oklahoma Bar Association and to the Roll of Attorneys.**

**SCBD No. 4844.**

Supreme Court of Oklahoma.

Feb. 14, 2006.

Elaine Meek, Tulsa, OK, Pro Se.

Mike Speegle, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, for Respondent.

EDMONDSON, J.

¶1 Petitioner, Elaine Meek, seeks reinstatement to the Oklahoma Bar Association after being disbarred in 1996. This is her first attempt at reinstatement. The Bar Association opposed her effort and after hearing held in June 2005, the trial panel of the

Professional Responsibility Tribunal unanimously recommended that her petition should be denied. Having thoroughly reviewed the evidence, we agree with the panel and we deny Ms. Meek's reinstatement.

¶ 2 The panel's findings of fact included the following regarding Ms. Meek: (1) at the time of her disbarment she was delinquent in payment of $450.00 of bar dues which remained unpaid; (2) following disbarment she did not comply with the Rule 9.1 of the Rules Governing Disciplinary Proceedings, 5 O.S. 1991, Ch. 1, App., requiring her to notify her clients and to furnish proof of compliance; (3) since disbarment, she had received only six hours of CLE; (4) there was no evidence she had engaged in the unauthorized practice of law since disbarment; (5) her testimony regarding the circumstances of the original offense and her justifications for failing to respond to the grievance process and pay costs imposed and delinquent dues were unbelievable, inconsistent, contradictory and not worthy of belief.

¶ 3 In reinstatement proceedings, as in all other matters involving the disciplining and licensing of attorneys, we do not sit in review of the trial panel's recommendations, but exercise our exclusive original jurisdiction and apply a *de novo* standard of review in reaching our decision. *Matter of the Reinstatement of Kamins*, 1988 OK 32, 752 P.2d 1125. No presumption of correctness attaches to the trial panel's findings and conclusions, and its recommendations to this Court are merely advisory in nature. *Matter of the Reinstatement of Pierce*, 1996 OK 65, 919 P.2d 422; *Matter of Reinstatement of Page*, 1993 OK 165, 866 P.2d 1207. The applicant bears the burden in reinstatement proceedings, and that burden is recognized as a heavy one. See *Matter of Reinstatement of Wright*, 1995 OK 128, 907 P.2d 1060. Rule 11.4 of the Rules Governing Disciplinary Proceedings, provides the following:

An applicant for reinstatement must establish affirmatively that, if readmitted ... the applicant's conduct will conform to the high standards required of a member of the Bar. The severity of the original offense and the circumstances surrounding it shall be considered in evaluating an application for reinstatement. The burden of proof, by clear and convincing evidence, in all such reinstatement proceedings shall be on the applicant. An applicant seeking such reinstatement will be required to present stronger proof of qualifications than one seeking admission for the first time. The proof presented must be sufficient to overcome the Supreme Court's former judgment adverse to the applicant. Feelings of sympathy towards the applicant must be disregarded. If applicable, restitution, or the lack thereof, by the applicant to an injured party will be taken into consideration by the Trial Panel on an application for reinstatement. Further, if applicable, the Trial Panel shall satisfy itself that the applicant complied with Rule 9.1 of these Rules.

¶ 4 In addition, reinstatement proceedings are governed by Rule 11.5 of the Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A, which provides that before an applicant may be reinstated, the trial panel must specifically find that he or she: (1) possesses the good moral character entitling him to be admitted to the Oklahoma Bar Association; (2) has not engaged in any unauthorized practice of law during the period of suspension, disbarment or resignation; and (3) possesses the competency and learning in the law required for admission to practice law in Oklahoma.

¶ 5 In our examination of the evidence presented we must also consider the following additional factors which we set forth in *Kamins, supra*, at 1130:(1) applicant's present moral fitness; (2)applicant's demonstrated consciousness of wrongful conduct and the disrepute presented for reinstatement; (3)extent of applicant's rehabilitation; (4) the seriousness of the original misconduct; (5) applicant's conduct after the imposition of discipline; (6) the time which has elapsed since the resignation; (7) applicant's character, maturity and experience at the time of discipline or resignation; and (8) applicant's present competence in legal skills. See also *Matter of Reinstatement of Clifton*, 1990 OK 15, 787 P.2d 862, 863.

¶ 6 Our primary concern in consideration of applications for reinstatement, as in all licensing and discipline matters, is not to punish attorneys, but to safeguard the public, the courts and the legal profession. We therefore undertake our duty to determine an application seeking reinstatement to the bar with utmost seriousness. See *Kamins, supra,* at 1129. It is with these directives in mind that we now examine the evidence presented in the matter of Ms. Meek's reinstatement.

¶ 7 The relevant facts are these. Ms. Meek was admitted to the Oklahoma Bar Association and her name was entered on the Roll of Attorneys in 1983. It appears she was a general practitioner and, at the times pertinent to our inquiry, she was in practice by herself. Ms. Meek's disciplinary history reveals that in 1994 in *State of Oklahoma ex rel. Oklahoma Bar Association v. Meek,* 1994 OK 118, 895 P.2d 692, this Court suspended her from the practice of law for one year and imposed costs in the amount of $1,065.96, based upon our findings that she had: (1) commingled and converted client funds; and (2) knowingly misrepresented facts surrounding the complaint to the Bar Association in the grievance process. In that matter, her client had filed a grievance against her with the Bar Association on October 26, 1993, because Ms. Meek had deposited an alimony check from the client's ex-husband in her operating account rather than in her attorney trust account, and had applied the proceeds to her own expenses rather than for the intended purpose of paying on the alimony debt. After the client requested payment, Ms. Meek wrote her checks on her trust account but they were returned for insufficient funds.

¶ 8 On October 22, 1996, Ms. Meek was disbarred by order of this Court in *State of Oklahoma ex rel. Oklahoma Bar Association v. Meek,* 1996 OK 119, 927 P.2d 553, based on unrelated grievances filed in 1995 by two clients. Both alleged professional misconduct by Ms. Meek had occurred during approximately the same period of time as the matter at issue in the suspension proceeding. These grievances alleged Ms. Meek failed to communicate with her clients, failed to perform the legal services she was hired to do and misrepresented to her the clients what legal services she had in fact performed for them.

¶ 9 In one matter, a mother had retained Ms. Meek to file an appeal of her son's criminal conviction and Ms. Meek failed to file the brief in the correct form. She then failed to respond to an order issued by the Court of Criminal Appeals to submit a corrected brief, and failed to respond to a show cause order as to why she had not complied or proceeded diligently with the appeal. Although she assured her client the proper filings had been made, no brief was ever filed and the appeal was dismissed by the Court. In the other matter, a client had tried unsuccessfully to find Ms. Meek so she could get her files back and hire another lawyer. She testified she happened to see Ms. Meek at a neighborhood festival and approached her to discuss the case, but that Ms. Meek acted strangely and "kind of ran away." The client then complained to the Bar and sought its assistance.

¶ 10 The Bar Association's attempts to notify Ms. Meek of those grievances by regular mail and certified mail were unsuccessful, and private process servers were used to serve her copies of the grievances and subpoenas to appear for depositions concerning them. She did not respond to the grievances, but she did appear for one of the depositions. At the deposition, Ms. Meek initially refused to give an address where the Bar Association could contact her, expressing concern that she and her daughter might be in physical danger from a former criminal client if she could be located through the Bar Association. She also alleged that employees of the General Counsel's Office and certain members of the Bar Association were conspiring against her and that their actions may have resulted in an inquiry by the Federal Bureau of Investigation. At that time, Ms. Meek agreed to provide the Bar Association with certain documents relating to her clients and to her trust account, but those documents were never received by the Bar.

¶ 11 On February 26, 1996, the Oklahoma Bar Association filed a formal complaint against Ms. Meek, charging her with six

counts of professional misconduct, specifically: (1) charging a fee unsupported by her work product; (2) failing to provide competent representation; (3) neglecting legal matters; (4) failing to communicate with clients; (5) misrepresenting the status of cases to clients and the Bar Association, and conduct prejudicial to the administration of justice; and (6) failing to comply with regulations governing a prior suspension or to cooperate in that grievance procedure.

¶ 12 The Bar Association repeatedly tried to communicate with Ms. Meek to notify her of the formal complaint, but those efforts were unsuccessful. "Service was accomplished on March 21, 1996" after a private process server was hired to serve her. 927 P.2d at 556. Ms. Meek did not file an answer. The Bar Association filed a motion to deem the allegations admitted, which was granted after Ms. Meek, having been given notice of hearing on the motion, did not appear to show cause why the motion should not be granted. Ms. Meek was ordered to appear at the Bar Center for the disciplinary hearing, but she did not respond to the order or appear at the hearing. Hearing was had, evidence was presented and the trial panel recommended her disbarment.

¶ 13 This Court found clear and convincing evidence supported each count of professional misconduct charged in the complaint. We also found that while Ms. Meek was under the 1994 prior suspension she refused to cooperate in the grievance procedure, she made misrepresentations of material facts to the Bar Association, and she failed to comply with the mandatory requirements of Rule 9.1. We determined that those actions, considered together with Ms. Meek's prior suspension from the Bar Association, demonstrated an "indifference to her obligations as a member of the Oklahoma Bar Association" which warranted her disbarment together with imposition of costs in the amount of $1,134.80. 927 P.2d 558–559.

¶ 14 On October 5, 2003, Ms. Meek filed her petition for reinstatement now before us. It reads in part:

"5. That on the 22nd day of October, 1996, Applicant was stricken from the roll of attorneys of the Oklahoma Bar Association for the following reasons: nonpayment of dues and non-compliance with mandatory CLE requirements....

7. Applicant has not been disbarred from the Oklahoma Bar Association or any other state or federal bar and has not resigned pending investigation or disciplinary proceedings from the Oklahoma Bar Association or any other state or federal bar with the five years immediately preceding the date of this petition."

¶ 15 The Oklahoma Bar Association filed an objection to her petition, contending that her assertion that she has not been disbarred is a material misstatement of fact and asking that her petition therefore be dismissed or denied. Ms. Meek did not respond to the objection.

¶ 16 In January 2004, Ms. Meek appeared for a deposition at the Bar Center regarding her petition and underlying facts surrounding her application and testified that she did not know she had been disbarred in 1996. She stated that she resigned her membership after she was suspended in 1994, and she expressed surprise to learn that this Court had ordered her disbarred after her resignation. Ms. Meek explained she resigned by cutting up her Bar Association card and sending it to the Bar with a note stating that she was resigning, and she believed that action was sufficient to effect her resignation, stating she did not know an order from this Court or any other procedure would have been necessary to resign.

¶ 17 She stated she did not remember being served with a copy of the formal complaint on March 21, 1996, but agreed that she may have been served. She stated she had felt no need to respond to the Bar's objection and explain the disbarment discrepancy in the petition to this Court because her petition for reinstatement was filed with the Bar Association, not this Court. She indicated she would file a response to the objection.

¶ 18 On June 9, 2005, a hearing on her reinstatement petition was held at the Bar Center and Ms. Meek appeared and represented herself. She presented no witnesses other than herself. It is a fair assessment of that proceeding to say she presented no evi-

dence showing she that she met the mandatory requirements for readmission set forth in the Rules governing Disciplinary proceedings and *Kamins*. In fact, she presented no evidence which was favorable to her application.

¶ 19 She testified she did not contest the disbarment proceeding because the Bar Association had threatened her child and she felt if she defended herself it would place her family in jeopardy. She stated she had been "told" that if she surrendered her license to the Bar, "all the threats against [her] child would stop," and that "in return" the Oklahoma Bar Association, which was "aware that she was asked to surrender her license," would "drop all the harassment, stalking, whatever, of [her and her] child, the intimidation of [her] clients." Tr. at 9. She stated that she felt it was not right that after she surrendered her license, the Bar filed the disbarment proceeding as she was "forced to choose between [her] child's safety and defending [herself] in a hearing." Tr. at 10. She stated she believed these actions by the Bar Association to threaten her family were illegal and immoral and that was one of the reasons she had not paid the costs imposed against her in the disbarment action.

¶ 20 Ms. Meek explained that these threats and the harassment of her child by the Oklahoma Bar Association had a "long history," and had caused her to resist turning tax records over to the Bar. Because the child's birth date and Social Security number appear there, Ms. Meek believed disclosure would place her at risk. She explained that she would have applied for reinstatement earlier but she wanted to wait until her child was old enough to have moved out of state, because she thought her application would put her safety at risk. The series of factual events and coincidences Ms. Meek recounted and relied upon to explain why she believed the members and staff of the Bar Association were conspiring against her were unproven, unconvincing and unworthy of belief.

¶ 21 The investigator for the Bar Association testified that Ms. Meek's file at the Bar Association contained an envelope from her which was postmarked late December of 1994. It contained her Bar card, cut in half,

stapled to a copy of her check sent for payment of the costs assessed in the suspension action. Also in the file was a statement showing that four months later, on April 15, 1995, Ms. Meek' paid her 1995 Bar dues.

¶ 22 After our review of the evidence, we conclude that Ms. Meek did not carry the burden of proof placed upon her to present clear and convincing evidence in support of her application for reinstatement to show that her future conduct will conform to the high standards required of a member of the Bar. The evidence presented here is insufficient to overcome our previous order of disbarment.

¶ 23 It is therefore the order of the Court that the petition for reinstatement is DENIED. The Bar Association's application for an order assessing costs against Ms. Meek in the amount of $1,174.07 for expenses incurred in this action is granted, and she is ordered to pay said costs within ninety days from the date this opinion becomes final.

¶ 24 WATT, C.J., WINCHESTER, V.C.J., LAVENDER, HARGRAVE, OPALA, KAUGER, TAYLOR, JJ., concur.

¶ 25 COLBERT, J., not participating.