2008 OK 24

**In the Matter of the REINSTATEMENT OF W.E. Pat PATE II a/k/a Pat Pate, Jr. to Membership in the Oklahoma Bar Association and to the Roll of Attorneys.**

**SCBD No. 5275.**

Supreme Court of Oklahoma.

March 18, 2008.

Gary Rife, Oklahoma City, for applicant.

Dan Murdock, General Counsel, Oklahoma Bar Association, Oklahoma City, for respondent.

EDMONDSON, V.C.J.

¶1 Applicant, W.E. Pat Pate II was admitted to the Oklahoma Bar Association in 1991. On April 30, 1999, Mr. Pate submitted his resignation pending disciplinary proceedings to this Court and his name was stricken from the Roll of Attorneys by order of this Court on May 11, 1999, in *State of Oklahoma ex rel. Oklahoma Bar Ass'n. v. Pate*, 1999 OK 42, 983 P.2d 1015.

¶2 This is Mr. Pate's first attempt at reinstatement. He filed his petition for reinstatement to membership in the Oklahoma Bar Association and the practice of law pursuant to Rule 11.1 of the Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A, (RGDP), and a hearing on his application was had before a three-member Trial Panel of the Professional Responsibility Tribunal. The Panel concluded Mr. Pate had presented sufficient evidence in support of his application to meet his burden of proof

and had satisfied all requirements for reinstatement. The panel unanimously recommended his petition should be granted subject to specific mandatory conditions upon Mr. Pate. The Oklahoma Bar Association presented no witnesses against Mr. Pate and urges us to grant his petition.

¶3 In bar reinstatement proceedings, as in other disciplinary matters concerning the licensing of attorneys, the Supreme Court exercises its original and exclusive jurisdiction by applying a *de novo* standard of review. *Matter of Reinstatement of Page*, 2004 OK 49, 94 P.3d 80, 81. Because the ultimate decision regarding reinstatement rests with this Court, the recommendations of the trial panel, while entitled to great weight, are merely advisory in nature. *Matter of Reinstatement of Meek*, 2006 OK 14, 130 P.3d 255; *Matter of Reinstatement of Kamins*, 1988 OK 32, 752 P.2d 1125, 1129.

¶4 The burden placed on an applicant seeking reinstatement to the practice of law is a heavy one and it is the same whether applicant was disbarred or resigned from the bar pending disciplinary proceedings. *Matter of Reinstatement of Hardin*, 1996 OK 115, 927 P.2d 545, 546. Reinstatement is not automatically granted on evidence, even if undisputed, showing the applicant has engaged in only proper conduct during suspension; an applicant must affirmatively establish that if reinstated his or her conduct will conform to the high standards required of a member of the Bar. *Matter of Reinstatement of Hanlon*, 1993 OK 159, 865 P.2d 1228. Rule 11.4 RGDP requires the applicant in a reinstatement proceeding to bear the burden of showing by clear and convincing evidence that his or her application warrants reinstatement. In pertinent part, Rule 11.4 states:

An applicant for reinstatement must establish affirmatively that, if readmitted or if the suspension from practice is removed, the applicant's conduct will conform to the high standards required of a member of the Bar. The severity of the original offense and the circumstances surrounding it shall be considered in evaluating an application for reinstatement. The burden of

proof, by clear and convincing evidence, in all such reinstatement proceedings shall be on the applicant. An applicant seeking such reinstatement will be required to present stronger proof of qualifications than one seeking admission for the first time. The proof presented must be sufficient to overcome the Supreme Court's former judgment adverse to the applicant. Feelings of sympathy toward the applicant must be disregarded.

¶5 Rule 11.5 RGDP provides that the trial panel must make three additional specific findings before an applicant can be reinstated. They are that the applicant:(1) possesses the good moral character entitling him or her to be admitted to the Oklahoma Bar Association; (2) has not engaged in any unauthorized practice of law during the period of suspension, disbarment or resignation; and (3) possesses the competency and learning in the law required for admission to practice law in Oklahoma.

¶6 Because this Court views applications seeking reinstatement to the practice of law with utmost seriousness and it is our primary duty to safeguard the interests of the public, the courts and the legal profession, we have determined that consideration of the following additional factors is required in our review of the evidence:(1) the present moral fitness of the applicant; (2) the applicant's demonstrated consciousness of wrongful conduct and the disrepute which that conduct brought to the profession; (3) the extent of applicant's rehabilitation; (4) the seriousness of the original misconduct; (5) applicant's conduct after the resignation; (6) the time which has elapsed since the resignation or discipline; (7) applicant's character, maturity and experience at the time of discipline or resignation; (8) applicant's present competence in legal skills. In *Matter of Reinstatement of Kamins*, 1988 OK 32, 752 P.2d 1125, 1130. See also *Matter of Reinstatement of Elias*, 1988 OK 86, 759 P.2d 1021. All these factors are relevant and important but in a situation such as this which stems from an attorney's abuse of alcohol and drugs, we must be particularly concerned with evidence showing the extent

of applicant's rehabilitation, his conduct since he resigned, the treatment received for the condition and the time which has elapsed since the resignation. *Matter of Reinstatement of Hanlon,* 1993 OK 159, 865 P.2d 1228, 1231. Each application for reinstatement to the Bar Association must be considered on its own merits and will fail or succeed on the evidence presented and the particular circumstances of that individual's case. *Matter of Reinstatement of Cantrell,* 1989 OK 165, 785 P.2d 312, 314.

¶ 7 We concur with the panel's recommendation to approve Mr. Pate's petition for reinstatement to membership in the Oklahoma Bar Association and the practice of law. Based on our *de novo* review of the record, we find Mr. Pate did carry his heavy burden of showing by clear and convincing evidence that he is deserving of reinstatement as he meets all the requisite criteria for reinstatement set forth above and that if reinstated his conduct will meet the high standards required of members of the Bar.

¶ 8 The record shows the following. From the time Mr. Pate was admitted to the Oklahoma Bar Association in 1991 until he resigned in 1999, he lived in Poteau, Oklahoma, and practiced law there, although for a period of approximately ten months, he served as Assistant District Attorney in Pushmataha County. Mr. Pate's family is well known in the LeFlore County community and their name has long been associated with the local practice of law; his father was a judge there as well as a practicing attorney, and his uncle was a practicing lawyer there. Mr. Pate was a general practitioner, well known for willingly representing economically deprived clients in matters which were of great importance to them but offered minimal compensation to counsel.

¶ 9 Mr. Pate's April 30, 1999, affidavit filed in support of his application seeking our approval for his resignation pending disciplinary proceedings reflects that multiple grievances had been filed against him with the Office of General Counsel, alleging he: (1) received client funds to be applied to fines and costs that were not used for that intended purpose which resulted in a client's arrest; (2) misused trust account funds intended for payment of funeral expenses which resulted in a suit against a client; (3) neglected his duties and made misrepresentations in a bankruptcy matter; (4) neglected duties and failed to communicate while charging excessive fees in domestic matters; and (5) issued insufficient fund checks for personal purposes which were drawn on client trust accounts. His offenses were obviously of a very serious nature. They involved criminal actions as well as significant breaches of a lawyer's duties to his client and showed grievous disregard for his professional responsibilities. These actions violated Rules 1.3 and 1.4 Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch.1, App. 1–A; Rules 1.1, 1.2, 1.3, 1.4, 1.5, 1.15, 1.16, and 8.4, Rules of Professional Conduct, 5 O.S.1991, Ch. 1, App. 3–A.

¶ 10 Before the trial panel, Mr. Pate testified that his failure to properly attend to the affairs of his clients in a lawful and professional manner resulted from long-term substance abuse problems. Conceding that he was an alcoholic and a drug addict, Mr. Pate was very open and honest and with the panel in his testimony. He described in detail his life before and after his resignation and offered no excuses or rationalizations for his behavior. He accepted all responsibility for his failings, professional and personal, and their consequences. He did not minimize the seriousness of his offenses, and he fully acknowledged and expressed remorse for the disfavor and disrepute his actions had cast upon his profession and the judiciary.

¶ 11 Mr. Pate told the panel he now recognizes he was about the last person in LeFlore County to know that he was addicted to drugs, that it was causing significant problems in his life and that he was in trouble. His family and friends, attorneys and judges in Le Flore County, the local bar association and the townspeople had long been aware that he was impaired. By April 30, 1999, when he finally realized he was out of control and came to the Bar Center in Oklahoma City to sign his resignation in the General Counsel's office, friends and clergy had already tried interventions, the local bar association was taking action to deal with problems he was creating and local lawyers were

taking steps to shift his client load away from him.

¶ 12 Very shortly after his resignation, he entered a drug and alcohol treatment program in Arkansas where he spent seven days as an inpatient and three weeks as an outpatient. This initial treatment was not successful. Mr. Pate related that he was not able to stay off drug and alcohol for more than a few weeks at a time. By October 1999, he was beginning to do fairly well and got a job researching title and land records, but he was still drinking. Things did not go well after that. His wife left him when she found out he was not staying sober. He did not go back to work and he moved in with his parents.

¶ 13 In October 2000, Mr. Pate became fully dedicated to recovery. At first he was simply attending Narcotics Anonymous meetings in Arkansas and Poteau, but very soon he started chairing their meetings and became very involved in serving the organization on the regional level as well. He became area chairperson and began putting together workshops aimed at coordinating meetings with the new drug court groups to help them learn more about recovery and enable them to have people with "clean time" of long duration at their meetings. This has been the focus of his service in recovery.

¶ 14 Mr. Pate continues to attend many meetings, serving as a speaker at meetings and facilitating workshops. He has become involved with the Lawyers Helping Lawyers Committee and provides the director with regular weekly reports of his activities and meetings attended. He plans to remain an active part of that group if he is readmitted. He explained that his personal recovery is to go to as many meetings as possible and work with his sponsors to complete his twelve steps of recovery. He tries to work through the steps every year to keep refreshed. Mr. Pate has also attended Alcoholics Anonymous meetings on a regular basis.

¶ 15 Mr. Pate is currently employed as a supervisory child-care worker in a Group Home for adolescent boys where he works from 55 to 65 hours a week. He lives with his parents, who are both in ill health, and he and his sons care for them on a daily basis. Mr. Pate has fully reimbursed the Client Security Fund for the $7,928.00 paid out to clients who suffered losses. The Bar Association notes that this is a restitution payment which should be considered in the determination of Mr. Pate's application. Rule 11.4 RGDP. Restitution is evidence of his demonstrated consciousness of the wrongfulness of his conduct and his continuing growth toward financial stability. He has stayed current in the law by regularly reading Bar Journals and attending continuing legal education courses every year, for some years taking more than the mandatory hours.

¶ 16 Mr. Pate stated that if his application is approved, he will likely reestablish a small law practice in Poteau, possibly together with his brother, and will probably concentrate on real estate and contract law. He thought he would not practice criminal law for at least five years as he did not want to be under suspicion and because ethical problems might arise by reason of his being a panel leader for drug court.

¶ 17 Mr. Pate explained that he waited well past the minimum five-year period to apply for reinstatement because he needed to be sure he had paid back the Client Security Fund and he thought it important for the Bar and for himself that he have a minimum of five years clean and sober before he applied, and he had now achieved seven years.

¶ 18 Residents of Poteau—an officer with the Police Department, a clergyman and a retired lawyer/legislator—all lifelong friends of Mr. Pate and his family, testified as to their personal knowledge of his substance abuse problems and of the hard, long and dedicated efforts he has put forth to turn his life around. They explained that Poteau is a small town and the entire community had been well aware of his drug usage and is now aware of his recovery. They believe that the community would be forgiving and receptive to his return to the practice of law there. Additionally, testimony was given that Mr. Pate is an honest and trustworthy man; none was aware of any unauthorized practice of law by Mr. Pate since his resignation.

¶ 19 Two lawyers, themselves recovered substance abusers, and a judge submitted letters supporting his reinstatement and attesting to the success of his recovery efforts and very active involvement in programs to help others suffering from substance abuse and addiction problems.

¶ 20 Mr. Glenn Mirando, the Director of the Lawyers Helping Lawyers Committee, testified by letter that he met Mr. Pate when he had been clean and sober for 6 years and he then entered in a monitoring program with the Committee whereby he continually advises the committee of his progress in his twelve step program. He was of the opinion that Mr. Pate will continue to do everything necessary to maintain sobriety and positive recovery as he has become entrenched in his sobriety. He believed Mr. Pate to be a person of high character, competency and moral integrity and it was the Committee's desire that Mr. Pate become an active member of the Committee should he be readmitted.

¶ 21 A letter was also submitted on behalf of Mr. Pate by Mr. Douglas Sanders, Jr., a Poteau lawyer who was the President of the Oklahoma Bar Association when Mr. Pate resigned. He has known Mr. Pate all his life and spoke of him as a man who has "slaughtered his demons of the past" and who would now be a welcomed and beneficial member of the LeFlore County Bar. He also addressed issues of notice of Mr. Pate's resignation to Mr. Pate's clients which are discussed below.

¶ 22 Both parties advised the Panel that Mr. Pate did not strictly comply with the notice requirements of Rule 9.1, RGDP which provides:

When the action of the Supreme Court becomes final, a lawyer who is disbarred or suspended, or has resigned membership pending disciplinary proceedings, must notify all of the lawyer's clients having legal business then pending within twenty (20) days, by certified mail, of the lawyer's inability to represent them and the necessity for promptly retaining new counsel.

* * *

The lawyer shall also file a formal withdrawal as counsel in all cases pending in any tribunal. The lawyer must file, within twenty (20) days, an affidavit with the Commission and with the Clerk of the Supreme Court stating that the lawyer has complied with the provisions of the Rule, together with a list of the clients so notified and a list of all other state and federal courts and administrative agencies before which the lawyer is admitted to practice. Proof of substantial compliance by the lawyer with this Rule 9.1 shall be a condition precedent to any petition for reinstatement.

¶ 23 He did not give written notice to his clients that he had resigned and they would need to get successor counsel to represent them. Undisputed testimony by all witnesses showed his noncompliance resulted from incapacity due to substance abuse. Mr. Pate's testimony, confirmed by Mr. Sanders' explanation in his letter, established that everyone who needed to be notified that Mr. Pate had resigned and they needed to get a new lawyer was notified, although not by certified letter. Mr. Pate believed he had only 30–35 clients by then as he had been limiting his practice since the beginning of the year. The local bar and the judiciary involved in Mr. Pate's cases were already aware his resignation was imminent. Mr. Sanders was present when Mr. Pate met with General Counsel to execute his resignation and immediately notified the judiciary and LeFlore County Bar Association of Mr. Pate's resignation, though they had known for quite awhile that he could not continue to practice law in such condition. Members of the bar had already intervened and were assisting Mr. Pate in resolving cases. Mr. Pate's clients and the entire community knew his situation. Mr. Pate in fact did notify some clients in person, delivered files personally to some clients and made arrangements for some to have new counsel. He also posted notice on his door advising clients and lawyers to contact his father for any file they wanted and informed his uncle and his office which was next door. Two local papers reported the news of his resignation on the front page as being a disbarment.

¶ 24 Mr. Sanders commented that he knows that community and the legal commu-

nity very well and he did not believe there was anything Mr. Pate could have done that would have conveyed any more information as to his law license and practice than already existed as common knowledge within the entire community.

¶ 25 We do not fault the Trial Panel's finding that Mr. Pate's proof of notice met the standard of substantial compliance with the prerequisites to reinstatement set forth by Rule 9.1. See *Matter of Reinstatement of Elias,* 1988 OK 86, 759 P.2d 1021, 1025, where we found that while a lawyer did not strictly comply with Rule 9.1, he had exercised considerable care in providing for his clients and their future representation where he had informed them of his decision to resign before he actually executed the resignation. We noted the clear intent of the rule is to protect the interests of clients of an attorney who is subjected to denial of his ability to practice law by reason of disciplinary proceeding, and that the intent of the rule may be served, as the statute states, by proof of substantial compliance.

¶ 26 The Report of the Trial Panel unanimously concluded that Mr. Pate had established by clear and convincing evidence that all requirements necessary for his reinstatement to membership in the Oklahoma Bar Association were satisfied and recommended that Mr. Pate be reinstated to the practice of law subject to certain requirements imposed as probationary conditions for the first five years of his reinstatement to be supervised by the Oklahoma Bar Association. Mr. Pate willingly agrees to these conditions, and the Oklahoma Bar Association does not object to his reinstatement subject to the Panel's recommendations. Those conditions require Mr. Pate to refrain from the use of alcohol or any illegal substances and to continue participation in the Lawyers Helping Lawyers Committee and to continue attendance at Alcoholics Anonymous and/or Narcotics Anonymous. Independent verification of his attendance will be provided to the Lawyers Helping Lawyers Committee which will also direct random urinalysis testing. Mr. Pate also agreed to participate in the Law Office Management program with Mr. Jim Calloway of the Oklahoma Bar Association with specific instruction regarding trust fund management.

¶ 27 Under the particular facts and circumstances put in evidence in this matter, we agree with the recommendation of the Professional Review Tribunal and the Oklahoma Bar Association that this applicant has satisfied all the requirements for reinstatement by clear and convincing proof and his petition should be granted. We direct applicant to comply with the probationary conditions of reinstatement recommended by the Panel and agreed to by both parties. See *Matter of Reinstatement of Rhoads,* 2005 OK 53, ¶ 17, 116 P.3d 187, 191 (directing continued involvement in Lawyers Helping Lawyers program).

¶ 28 We respect petitioner for his dedicated efforts to achieve recovery and overcome his problems of drug and alcohol abuse. The Petition for Reinstatement of W.E.Pat Pate II A/K/A Pat Pate, Jr. to Membership in the Oklahoma Bar Association and the Roll of Attorneys is hereby GRANTED. Costs in the amount of $1,042.83 are to be paid within ninety days from the date this opinion becomes final.

¶ 29 WINCHESTER, C.J., EDMONDSON, V.C.J., HARGRAVE, OPALA, KAUGER, WATT, COLBERT, REIF, JJ., Concur.

¶ 30 TAYLOR, J., Dissenting.

The law requires that the Respondent prove by clear and convincing evidence that he has "stronger proof of qualifications than one seeking admission for the first time". (Rule 11.4 RGDP)

This Respondent's application for reinstatement should be denied. His qualifications are not stronger than one seeking admission for the first time.