IN RE MATTER OF THE REINSTATEMENT OF TUNELL



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:IN RE MATTER OF THE REINSTATEMENT OF TUNELL

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 IN RE MATTER OF THE REINSTATEMENT OF TUNELL
2018 OK 82
Case Number: SCBD-6611
Decided: 10/22/2018
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2018 OK 82, __ P.3d __

 
FOR PUBLICATION IN OBJ ONLY. NOT RELEASED FOR PUBLICATION. 

IN RE: MATTER OF THE REINSTATEMENT OF WILLIAM P. TUNELL, JR. TO THE ROLL OF ATTORNEYS OF THE STATE OF OKLAHOMA.

ORDER DENYING REINSTATEMENT

¶1 William P. Tunell, Jr. (Tunell or Petitioner) filed a petition on December 20, 2017, for reinstatement of his membership in the Oklahoma Bar Association (OBA). As required by Rule 11.3 of the Rules Governing Disciplinary Proceedings (RGDP), 5 O.S.2011 ch. 1, app. 1-A, the Professional Responsibility Tribunal (PRT) held a hearing on Tunell's application on April 17, 2018. The OBA opposed Tunell's application for reinstatement, but the PRT recommended that Tunell be reinstated.

¶2 Upon de novo review of the record, we find:

1. That Tunell has complied with the procedural requirements necessary for reinstatement, as set forth in Rule 11.1 of the RGDP, 5 O.S.2011 ch. 1, app. 1-A;

2. That Tunell has established by clear and convincing evidence that he has not engaged in the unauthorized practice of law in Oklahoma following his voluntary resignation, in compliance with Rule 11.5(b) of the RGDP, 5 O.S.2011 ch. 1, app. 1-A;

3. That Tunell has established by clear and convincing evidence that he possesses the competency and learning in the law required for reinstatement without re-examination, in compliance with Rule 11.5(c) of the RGDP, 5 O.S.2011 ch. 1, app. 1-A; but

4. That Tunell has not established by clear and convincing evidence that he possesses the good moral character and fitness necessary for reinstatement to the Oklahoma Bar Association.

¶3 At the reinstatement hearing, the OBA opposed reinstatement because it believes the "Petitioner's issues with anxiety, depression and alcoholism" are not being "appropriately treated."[1] Even now, the OBA hesitates to recommend reinstatement, submitting instead a request "that this Court closely scrutinize the record to ensure that Petitioner has appropriately handled his mental health and alcohol issues so that it [sic] does not interfere with his ability to practice law."[2]

¶4 This Court has the non-delegable, constitutional responsibility to regulate both the practice and the ethics, licensure, and discipline of Oklahoma practitioners of the law.[3] Our review of the record is made de novo, meaning we conduct a non-deferential, full-scale examination of all relevant facts.[4] The PRT's recommendations concerning these matters, while entitled to great weight, are merely advisory in character; and the ultimate decision--regarding facts, the evidence, and even the credibility of witnesses--rests with this Court.[5]

¶5 Reinstatement proceedings are governed by Rule 11 of the RGDP, 5 O.S.2011 ch. 1, app. 1-A. Rule 11.5 requires the PRT to make certain findings concerning an applicant's (1) good moral character, (2) competency in the law, and (3) participation in any unauthorized practice of law during the period of resignation. In addition to the reinstatement standards found in Rule 11.4, the Court also considers an applicant's (1) present moral fitness; (2) demonstrated consciousness of past wrongful conduct and the disrepute which it has brought upon the legal profession; (3) extent of rehabilitation; (4) past misconduct and its seriousness; (5) conduct subsequent to resignation; and (6) character, maturity, and experience at the time of resignation, as well as (7) the time which has elapsed since the applicant's resignation.[6]

¶6 Our review of the record and testimony reveals that Tunell was first diagnosed with depression and anxiety in 1987 and that he has struggled with alcoholism since 2011. Tunell testified that he began attending Alcoholics Anonymous (AA) in July of 2012, which he has allegedly attended ever since. He also claims to have attended three counseling sessions with Lawyers Helping Lawyers. Tunell further testified that, following a relapse in October of 2012, he attended 30 days of outpatient counseling for his alcoholism and mental health issues at the behest of his wife and his employer, the Holden Law Firm. Tunell testified that he had another relapse in late 2013 that resulted in the loss of his job with the Holden Law Firm. According to Tunell, he then had a good period of sobriety and signed on with the Abowitz Law Firm in early 2014. In late 2014 and early 2015, Tunell had a major relapse, which led to his dismissal from the Abowitz Law Firm. Shortly thereafter, Tunell and his wife separated. Tunell testified that this scared him into "a good period of sobriety," and he hung his own shingle. Tunell also testified, however, that he received 30 days of in-patient treatment at a facility near Dallas, Texas, during the summer of 2015. Eventually, his business dwindled--something he attributes partially to alcohol use and partially to depression and anxiety. In the summer of 2016, Tunell sought treatment for his mental health issues at a facility in Oklahoma City; they initially admitted him and placed him on a suicide watch, but then quickly released him after he started medication and agreed to follow-up care. Tunell stopped his medication shortly thereafter due to his belief that the medication did not help him, but he attended counseling sessions through A Chance for Change from August of 2016 until February of 2017, when finances prevented him from participating further. While these counseling sessions were ongoing, Tunell had another relapse in October of 2016 that resulted in a DUI conviction. At some point after the DUI but before the imposition of his deferred sentence and probation terms in January of 2017, Tunell had another relapse.

 

¶7 In May of 2017, Tunell resigned from the OBA, claiming that his resignation was due to financial hardships. Upon review of the record, it appears Tunell may have voluntarily resigned in order to avoid proceedings under Rule 7 of the RGDP following his DUI conviction. Tunell was on probation through June of 2017. In December of 2017, Tunell sought reinstatement to the OBA.

¶8 Tunell purports that he has been sober since late 2016 or early 2017, although he cannot provide a specific sobriety date. Tunell testified that he currently attends at least one AA meeting per week, but tries to attend two, particularly if it is a bad week for him.[7] He also testified that he treats both his alcoholism and depression issues using prayer, meditation, and community involvement. Tunell's alcoholism is likely propagated by the depression and anxiety from which he suffers, yet he has not taken any medication for depression or anxiety since mid-2016 or had any professional counseling since early 2017. When the PRT asked him what assurances he could give that he won't relapse again, Tunell responded, "If I'm being honest, I cannot give you any complete assurance that I won't relapse. . . . So I can't give you any assurances, but I very much believe moving forward that if I get that back in my life [i.e., being a lawyer], it gives me a three-legged stool, rather than a two-legged stool, to rely on and move forward."[8]

¶9 As evidence of his current moral character, Tunell testified himself and presented correspondence obtained from his priest, his estranged wife, a friend, and four attorneys who formerly worked with him. All of the attorneys' correspondence discussed Tunell's legal abilities when they last worked with him, but they have had no contact with him for years. Thus, they provide no evidence of rehabilitation.[9] Tunell's wife, priest, and friend all mention that Tunell is very involved in church and is a good father; but those letters also reflect that the same has been true for years -- even before the DUI and resignation. Consequently, his continued conduct as a good father and churchgoer is a poor indicator of any rehabilitation.[10] Regarding family responsibilities, Tunell's wife reports that he has not provided any child support during their 3-year separation and that, after agreeing to pay her auto insurance premiums, he failed to do so and failed to give her notice that she was uninsured.

 

¶10 Upon review of the relevant factors, this Court finds that Tunell has not presented clear and convincing evidence of appropriate treatment, rehabilitation, or good moral character at present. Furthermore, the problems he has with alcoholism, depression, and anxiety are serious -- even if they have never resulted in a client complaint or disciplinary investigation. The lack of such complaints and investigations is a testament to the diligence of Tunell's employers and coworkers. Finally, the amount of time which has lapsed since Tunell's voluntary resignation is minimal, and Tunell lacks a long enough track-record of proven moral character.

¶11 This is not to say Tunell shouldn't be readmitted to the bar at some point in the future. But on the record before us today, Tunell has not presented clear and convincing evidence of treatment, rehabilitation, or good moral character.

¶12 The petition of William P. Tunell, Jr. for reinstatement to the Oklahoma Bar Association is therefore DENIED. Pursuant to Rule 11.1(e) of the RGDP, 5 O.S.2011 ch.1, app. 1-A, the Petitioner may seek reinstatement again within one year of this denial.

¶13 DONE BY ORDER OF THE SUPREME COURT IN CONFERENCE THIS 22ND DAY OF OCTOBER, 2018.

/s/ Douglas L. Combs
CHIEF JUSTICE

Combs, C.J., and Winchester, Reif, Wyrick, and Darby, JJ., concur.

Gurich, V.C.J., and Kauger (by separate writing), J., concur in result.

Edmondson and Colbert, JJ., dissent.

FOOTNOTES

[1] Answer Br. of Resp't OBA at 4, In re Reinstatement of Tunell, No. SCBD-6611 (Okla. filed June 8, 2018).

[2] Id. at 6-7.

[3] In re Reinstatement of Gill, 2016 OK 61, ¶ 5, 376 P.3d 200, 202 (citing In re Reinstatement of Kerr, 2015 OK 9, ¶ 6, 345 P.3d 1118, 1121).

[4] Id. (citing State ex rel. Okla. Bar Ass'n v. Hulett, 2008 OK 38, ¶ 4, 183 P.3d 1014, 1016); In re Kerr, 2015 OK 9, ¶ 6, 345 P.3d at 1121 (citing In re Reinstatement of Otis, 2007 OK 82, ¶ 7, 175 P.3d 357, 361; Hulett, 2008 OK 28, ¶ 4, 183 P.3d at 1016; In re Reinstatement of Jones, 2006 OK 33, ¶ 7, 142 P.3d 380, 381).

[5] In re Gill, 2016 OK 61, ¶ 5, 376 P.3d at 202 (citing In re Reinstatement of Pate, 2008 OK 24, ¶ 3, 184 P.3d 528, 530; In re Reinstatement of Floyd, 1989 OK 83, ¶ 3, 775 P.2d 815, 816); In re Kerr, 2015 OK 9, ¶ 6, 345 P.3d at 1121 (citing Rule 6.15(a) of the RGDP, 5 O.S.2011 ch. 1, app. 1-A; State ex rel. Okla. Bar Ass'n v. Besly, 2006 OK 18, ¶ 2, 136 P.3d 590, 594; In re Reinstatement of Rhoads, 2005 OK 53, ¶ 2, 116 P.3d 187, 188; In re Reinstatement of Holden, 2003 OK 28, ¶ 5, 66 P.3d 416, 418; In re Reinstatement of Kamins, 1988 OK 32, ¶ 18, 752 P.2d 1125, 1129; State ex rel. Okla. Bar Ass'n v. Raskin, 1982 OK 39, ¶ 11, 642 P.2d 262, 265-66).

[6] See In re Reinstatement of Christopher, 2014 OK 73, ¶ 4, 330 P.3d 1221, 1223 (citing In re Reinstatement of Swant, 2003 OK 9, ¶ 5, 65 P.3d 275, 276; In re Reinstatement of Pearson, 2000 OK 61, ¶ 3, 9 P.3d 692, 694; In re Reinstatement of Phillips, 1996 OK 62, ¶ 4, 919 P.2d 419, 420); In re Kamins, 1988 OK 32, ¶¶ 20-21, 752 P.2d at 1130 (quoting State v. Russo, 630 P.2d 711, 714 (Kan. 1981)).

[7] Tunell's testimony about AA involvement is not substantiated by other evidence, despite the OBA's prodding for such corroboration. He didn't submit any documentation showing his attendance at AA. See Tr. of Reinstatement Hr'g at 68:13-:19, 70:16-71:4, In re Reinstatement of Tunell, No. SCBD-6611 (PRT Apr. 17, 2018). He also didn't proffer any witness who could verify his attendance at AA. See id. at 68:19-70:15, 108:6-109:3.

[8] Id. at 96:1-97:12, In re Reinstatement of Tunell, No. SCBD-6611 (PRT Apr. 17, 2018); see also id. at 18:15-:18 ("I cannot say I will not relapse again. I don't think any alcoholic can say that. But I will say that my handle on the situation is getting better.").

[9] See In re Reinstatement of Golden, 2013 OK 96, ¶ 11, 315 P.3d 377, 381-82; In re Reinstatement of Hanlon, 1993 OK 159, ¶ 10, 865 P.2d 1228, 1231 ("[T]he majority of the witnesses had had very little contact with Mr. Hanlon since his disbarment and testified primarily as to his former legal abilities, not as to his rehabilitation or his personal conduct.").

[10] See In re Reinstatement of Hird, 2001 OK 28, ¶ 18, 21 P.3d 1043, 1046 ("As evidence of his current moral character, Hird presented several witnesses that testified to Hird's involvement in his community and church and his trustworthiness. These are the same characteristics that Hird possessed before his conviction. Hird has failed to show that under pressures and circumstances similar to those which led to his past misconduct, he would now act differently. Hird has presented insufficient evidence to show a change in moral character since his resignation.").

 

 

KAUGER, J., with whom Gurich, V.C.J., joins, concurring in result:

¶1 I concur that at this time the respondent has not shown that he is ready for reinstatement. This is not the first time a lawyer with a dependency problem has been before the Court for reinstatement, been denied reinstatement, and later was successfully reinstated. In State of Oklahoma ex rel. Oklahoma Bar Association v. Albert, 2007 OK 31, 163 P.3d 527, the attorney agreed to an interim suspension because he was incapable of practicing law. After he was released from a rehabilitation program, he sought reinstatement.

¶2 We denied the attorney's first attempt at reinstatement because the attorney failed to meet the burden of proof necessary for reinstatement.

¶3 In that case, the attorney had sought in-patient treatment, agreed and submitted to random drug tests, completed a six week relapse prevention program, attended Alcoholics Anonymous, and participated in Lawyers Helping Lawyers. At his initial reinstatement hearing he presented testimony from a trial judge, a defense lawyer, his drug counselor and a friend he met in treatment, all of whom agreed that he should be reinstated, but also agreed that he needed safeguards in place such as counseling, monitoring, random urinalysis, and attendance of counseling and Lawyers Helping Lawyers.

¶4 We applauded his efforts to seek treatment, get sober, remain clean, and overcome his problems of drug and alcohol abuse, but given the severity of his afflictions, the severity of his misconduct, the surrounding circumstances, and the short time frame in which he sought reinstatement, we denied reinstatement.

¶5 Nine months later, he again requested reinstatement. At the second reinstatement hearing, the attorney demonstrated every factor which we consider for reinstatement due to a personal incapacity: present moral fitness; consciousness of the wrongfulness and disrepute brought on the profession; extent of rehabilitation; seriousness of the original misconduct; conduct subsequent to discipline; time elapsed since the original discipline; petitioner's character, maturity, and experience; and present competence in legal skills. This time he was reinstated.

¶6 Here, the attorney provided little evidence of rehabilitation or of continuing treatment for alcoholism, depression and anxiety. He stopped taking his medicine in 2017 because he thought it was ineffective. This attorney must continue on his track of recovery and demonstrate his commitment to sobriety by making a showing that, over a significant amount of time, he has maintained sobriety and refrained from abusing drugs or alcohol. Once he accomplishes this, he should be reinstated.

 

 

 

 





 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1988 OK 32, 752 P.2d 1125, Reinstatement of Kamins, Matter of
Discussed at Length
 1989 OK 83, 775 P.2d 815, Reinstatement of Floyd, Matter of
Discussed
 1993 OK 159, 865 P.2d 1228, 64 OBJ 3636, Reinstatement of Hanlon, Matter of
Discussed
 2001 OK 28, 21 P.3d 1043, 72 OBJ 845, IN THE MATTER OF THE REINSTATEMENT OF HIRD
Discussed
 2003 OK 9, 65 P.3d 275, IN THE MATTER OF THE REINSTATEMENT OF SWANT
Discussed
 2003 OK 28, 66 P.3d 416, IN THE MATTER OF THE REINSTATEMENT OF HOLDEN
Discussed
 2005 OK 53, 116 P.3d 187, IN THE MATTER OF REINSTATEMENT OF RHOADS
Discussed
 2006 OK 18, 136 P.3d 590, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. BESLY
Discussed
 2006 OK 33, 142 P.3d 380, IN THE MATTER OF THE REINSTATEMENT OF JONES
Discussed
 1996 OK 62, 919 P.2d 419, 67 OBJ 1695, In the Matter of the Reinstatement of Phillips
Discussed
 2007 OK 31, 163 P.3d 527, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. ALBERT
Discussed
 2007 OK 82, 175 P.3d 357, IN THE MATTER OF THE REINSTATEMENT OF OTIS
Discussed
 2008 OK 24, 184 P.3d 528, IN THE MATTER OF THE REINSTATEMENT OF PATE
Discussed
 2008 OK 28, 198 P.3d 886, CITY OF MIDWEST CITY v. HOUSE OF REALTY, INC.
Cited
 2008 OK 38, 183 P.3d 1014, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. HULETT
Discussed
 2013 OK 96, 315 P.3d 377, IN THE MATTER OF THE REINSTATEMENT OF GOLDEN
Discussed
 2014 OK 73, 330 P.3d 1221, IN THE MATTER OF THE REINSTATEMENT OF CHRISTOPHER
Discussed
 2015 OK 9, 345 P.3d 1118, IN THE MATTER OF THE REINSTATEMENT OF KERR
Discussed at Length
 2016 OK 61, 376 P.3d 200, IN THE MATTER OF THE REINSTATEMENT OF GILL
Discussed at Length
 1982 OK 39, 642 P.2d 262, State, ex rel., Oklahoma Bar Ass'n v. Raskin
Discussed
 2000 OK 61, 9 P.3d 692, 71 OBJ 1913, In Re PEARSON
Discussed


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA