In the Matter of the REINSTATEMENT OF Henry W. FLOYD membership in the Oklahoma Bar Association.

No. SCBD 3518.

Supreme Court of Oklahoma.

May 30, 1989.

Alan B. Foster, Asst. Gen. Counsel, Oklahoma City, for Oklahoma Bar Ass'n.

Vicki Miles–LaGrange, Oklahoma City, for petitioner.

SUMMERS, Justice.

The petitioner was disbarred in 1981 and in June of 1988 he petitioned for reinstatement. A trial panel of the Professional Responsibility Tribunal held a hearing on the petition and found: (1) that the petitioner possesses good moral character; (2) that there is no evidence that the petitioner had engaged in the unauthorized practice of law; (3) that the petitioner possesses the competency in learning required for admission; (4) that his present state of health is compatible with the practice of law; (5) that the petitioner's past problems with Bar complaints were principally in the area of lack of timely filings, and that his pro bono assistance as a clerk to several attorneys has now trained him in proper methods to insure meeting deadlines.

The panel unanimously recommended the petitioner's reinstatement upon payment of all costs associated with reinstatement. The parties have waived filing briefs and the Bar has requested in its waiver that the court adopt the report of the trial panel and reinstate Floyd to membership in the Bar.

A petition for reinstatement to membership in the Bar invokes this court's exclusive original jurisdiction. *Matter of Reinstatement of Elias*, 759 P.2d 1021 (Okl.1988). Although the panel's recommendations are merely advisory, *State ex rel. Oklahoma Bar Association v. Samara*, 683 P.2d 979, 984 (Okl.1984), the panel must make specific findings as to whether the applicant possesses good moral character, has engaged in the unauthorized practice of law, and whether the applicant possesses the competency and learning in the law required for admission. 5 O.S.1981, Ch. 1, App. 1–A, Rule 11.5. This court independently reviews the evidence submitted to the trial panel when, as in the case before us, the Bar recommends reinstatement. *Matter of Reinstatement of Essman*, 749 P.2d 103 (Okl.1987). Our review of the evidence includes determinations of: (1) the present moral fitness of the petitioner, (2) the petitioner's demonstrated consciousness of the wrongful conduct and disrepute which the conduct has brought the profession, (3) the extent of petitioner's rehabilitation, (4) seriousness of the original misconduct, (5) conduct subsequent to discipline, (6) the time which has elapsed since the original discipline, (7) the petitioner's character, maturity, and experience at the time of disbarment, and (8) petitioner's present competence in legal skills. *In the Matter of Kamins*, 752 P.2d 1125, 1130 (Okl.1988).

We conclude that the petitioner, Henry Floyd, has met his burden of proof and shall be reinstated to membership in the Bar.

### Trial Panel Proceedings

The petitioner's disbarment resulted from his conduct in agreeing to represent six clients and then neglecting their cases. He did not appear in the disbarment proceeding. We found that the petitioner: (1) failed to carry out contracts of employment; (2) withdrew from employment without taking steps to avoid prejudice to his clients; (3) neglected legal matters entrusted to him; (4) failed to seek the lawful objectives of clients; and (5) failed or neglected to refund unearned fees. Retainer fees were accepted and cases languished and died for want of prosecution. Some cases were not filed and some were filed but the petitioner failed to respond to motions and failed to timely appear. One case was dismissed for failure to appear for trial. One case was dismissed for failure to appear at the pre-trial conference and another was dismissed for failure to appear at a pre-trial conference for a second successive time. Claims were compromised as a result of the petitioner's conduct and his clients were denied justice.

In the reinstatement proceeding the petitioner admitted that he engaged in the con-

duct which resulted in his disbarment. He apparently did not "calendar" his cases in order to insure timely filings and appearances. He agreed to take cases although he did not have time to represent those clients. When he suffered health problems and stress arising from his family situation he transferred many of his cases to other lawyers. However, the record also reflects that his clients' pleas for information on the status of their cases, and ultimately for the return of their files, "fell on deaf ears".

Floyd testified that his misconduct was the result of ill health, stress, a change in his finances, and poor record keeping. He stated that this explanation was not offered as an excuse for his conduct, but to show how his rehabilitation was successful in treating his problems. Floyd testified that his blood pressure and heart condition require several medications and that their use is compatible with the practice of law. The Bar and Floyd stipulated that he has not suffered from, or undergone any treatment for, any mental condition or emotional instability.

Attorney P. testified that Floyd had three problems shortly before his disbarment: (1) that he suffered from high blood pressure and was taking prescribed medication which "pretty much knocked him out"; (2) that he was "going through his divorce" and; (3) he was experiencing problems with his children. Floyd testified that he now checks his pulse periodically, stays on his medication and a strict diet, and completed a "rehab program" at a VA hospital for hypertension patients. He also testified that his medication was different than that prior to being disbarred. He testified that his mother had periodically loaned him money in order that he could take "Title Seven" cases, and her death prior to his misconduct had a negative impact on his finances which added to his stress. Floyd also testified that he is presently divorced, has two adult children, resides with his aunt and two brothers, and lives a modest lifestyle on his VA disability income.

Floyd testified that he had performed research and drafting projects for at least nine lawyers since his disbarment. He indicated that this experience had taught him the importance of maintaining accurate files. When asked what he would do now to avoid the problems he earlier experienced, he stated: "I think the first thing would be to establish a calendar." He noted that taking on too many cases to help clients will ultimately hurt their interests.

Four attorneys testified on Floyd's behalf and commented on his character and fitness to practice law. Three of the attorneys had employed Floyd for research and drafting projects and had ample opportunity to observe his legal competence. They testified as to particular projects and cases Floyd had worked on and the competence he exhibited. The Bar stipulated as to Floyd's competence, and counsel for the Bar stated that: "we are satisfied from our investigation that he is in [sic] indeed competent to practice law". These same attorneys also had opportunity to observe Floyd's behavior. One attorney testified that he had questioned Floyd about his disbarment and Floyd had admitted that he was responsible for what had happened.

In summary, Floyd presented evidence that his misconduct was caused by his inability to cope with certain problems, and that those problems, with the exception of his health, are no longer present. He explained that his heart condition is now controlled and he is capable of coping with his health and the demands of practicing law.

The trial panel also incorporated into its findings stipulations of fact signed by the parties. One of these stipulations was that the petitioner make restitution to former clients. These clients had filed grievances against the petitioner but they were not included as part of the formal complaint resulting in his disbarment in 1981. Floyd filed an affidavit in this court stating that he had not found one of these former clients, or any surviving relatives of that client, but had made restitution to two former clients by payments to their relatives. The Bar's response to the affidavit states that Floyd is in compliance with the stipulation and requests that we so find. We

conclude that the affidavit shows compliance with the stipulation.

Floyd also stipulated that he would pay all costs associated with his petition for reinstatement. The Bar filed a motion to assess costs in the amount of $749.53. The motion is granted. 5 O.S.1981, Ch. 1, App. 1–A, Rule 11.1(c).

### Conclusion

Upon consideration of the factors listed in *In the Matter of Kamins,* supra, we find that the record shows that Floyd possesses the moral character required of a member of the Bar as well as the competence to engage in the practice of law without examination. We also find that the evidence shows that Floyd did not engage in the unauthorized practice of law.

Therefore, IT IS ORDERED that Applicant, Henry W. Floyd, is reinstated to membership in the Oklahoma Bar Association and to the Roll of Attorneys, effective upon the payment of costs in the amount of $749.53.

All Justices concur.