OSCN Found Document:IN THE MATTER OF THE REINSTATEMENT OF CHRISTOPHER

 
 
 
 OSCN navigation


 
 Home

 
 Courts

 
 Court Dockets

 
 Legal Research

 
 Calendar

 
 Help
 





 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 

 
 
 
 IN THE MATTER OF THE REINSTATEMENT OF CHRISTOPHER
2014 OK 73
Case Number: SCBD-6038
Decided: 07/16/2014
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2014 OK 73, __ P.3d __
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

IN THE MATTER OF THE REINSTATEMENT OF KATHRYN HOPE CHRISTOPHER TO MEMBERSHIP IN THE IN THE OKLAHOMA BAR ASSOCIATION AND TO THE ROLL OF ATTORNEYS

PROCEEDING FOR REINSTATEMENT TO THE OKLAHOMA BAR ASSOCIATION

¶0 Petitioner, Kathryn Hope Christopher (formerly Burgy), Petitioned for reinstatement to membership in the Oklahoma Bar Association following her suspension on September 21, 2009, for failure to pay membership dues. After a hearing, the trial panel of the Professional Responsibility Tribunal unanimously recommended reinstatement. Upon de novo review we approve Petitioner's reinstatement subject to her payment of costs in the amount of $3,173.23 within ninety (90) days from the date this opinion becomes final.

PETITION FOR REINSTATEMENT GRANTED; COSTS IMPOSED

Sheila J. Naifeh, 1408 South Denver, Tulsa, Oklahoma, for Petitioner.
Stephen L. Sullins, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Respondent.

COMBS, J.:

¶1 This cause is before the Court pursuant to Rule 11 of the Rules Governing Disciplinary Proceedings (RGDP), 5 O.S. 2011, Ch. 1, App. 1-A, for consideration of Petitioner, Kathryn Hope Christopher's, September 18, 2013, petition for reinstatement to membership in the Oklahoma Bar Association (OBA). Petitioner was originally admitted to practice law in Oklahoma on September 27, 1995, and was suspended by this Court on September 21, 2009, for failure to pay 2008 dues. In the Matter of the Striking of Names of Members of the OBA, 2009 OK 71. The OBA conducted an investigation and the Professional Responsibility Tribunal (PRT) held a hearing on March 27, 2014.[1]

¶2 The PRT filed its report with this Court on May 13, 2014, in which it unanimously determined that Petitioner should be reinstated to membership in the Oklahoma Bar Association. The OBA agrees with that recommendation. Petitioner filed her brief in chief on June 4, 2014, and the OBA waived its opportunity to file an answer brief on June 19, 2014. The PRT's report contained several findings required by Rule 11.5, RGDP, 5 O.S. 2011, Ch. 1, App. 1-A, and the report determined that: 1) Petitioner has demonstrated by clear and convincing evidence that she possesses good moral character sufficient to entitle her to be admitted to the OBA; 2) Petitioner has shown by clear and convincing evidence that she has not engaged in the practice of law during her suspension; and 3) Petitioner possesses the competency and learning in the law required for admission to practice law in the state of Oklahoma.

¶3 This Court exercises original and exclusive jurisdiction in bar reinstatement proceedings. In re Reinstatement of Swant, 2003 OK 9, ¶4, 65 P.2d 275; In re Reinstatement of Turner, 1999 OK 72, ¶14, 990 P.2d 861; In re Reinstatement of Brown, 1996 OK 95, ¶14, 925 P.2d 44. Although the PRT's recommendations are afforded great weight, those recommendations are advisory only and this Court exercises de novo review. Swant, 2003 OK 9, ¶4; Turner, 1999 OK 72, ¶14; In re Reinstatement of Phillips, 1996 OK 62, ¶1, 919 P.2d 419.

¶4 The requirements for reinstatement are set out in Rule 11.4 of the RGDP, 5 O.S. 2011, Ch. 1, App. 1-A, which requires that an applicant must establish affirmatively that her conduct will conform to the high standards required of a member of the Bar and is required to present stronger proof of qualifications than one seeking admission for the first time. This Court has previously stated that in a Rule 11 proceeding after the imposition of discipline we review the evidence and determine: 1) the present moral fitness of the applicant, 2) the applicant's demonstrated consciousness of his or her wrongful conduct and disrepute which the conduct has brought the profession; 3) the extent of the applicant's rehabilitation; 4) the seriousness of the original misconduct; 5) the applicant's conduct subsequent to discipline; 6) the time which has elapsed since the original discipline; 7) the applicant's character, maturity, and experience at the time of disbarment, and 8) the applicant's present competence in legal skills. Swant, 2003 OK 9, ¶5; In re Reinstatement of Pearson, 2000 OK 61, ¶4, 9 P.3d 692; Phillips, 1996 OK 62, ¶4.

¶5 However, because the present proceeding involves no prior imposition of discipline for lawyer professional misconduct, the focus of our inquiry in this cause is 1) the present moral fitness of the applicant; 2) her conduct subsequent to her suspension as it relates to her moral fitness and professional competence; 3) whether she has engaged in the unauthorized practice of law; and 4) whether she has complied with the rule-mandated requirements for reinstatement. Swant, 2003 OK 9, ¶6; Pearson, 2000 OK 61, ¶4; Phillips, 1996 OK 62, ¶5.

¶6 Petitioner Kathryn Hope Christopher was struck by a vehicle while crossing a street as a pedestrian in May of 1999. Petitioner suffered a traumatic brain injury, amongst other orthopedic injuries. Up until just prior to her injury, Petitioner had been engaged in the practice of law in Tulsa, Oklahoma for many years as a partner and trial attorney in the firm of Frasier & Frasier. Petitioner left this firm several weeks before her injury for a different position with fewer hours, citing a need for more time with her minor child.

¶7 After her injury, Petitioner was hospitalized and then underwent rehabilitation for approximately two months at the Institute for Research and Rehabilitation in Houston, Texas. It is evident from the record that Petitioner's serious injury initially had a negative impact on her performance as an attorney. Petitioner testified at the PRT hearing that she had no stamina, had vision issues and other cognitive issues, and became prone to impulsive decisions. Transcript of Proceedings before the Professional Responsibility Tribunal, pp. 65-68. Despite a much-reduced workload on account of her injury, Petitioner's employer kept her on the payroll for several months because they thought very highly of her.

¶8 The record indicates that in 2000 Petitioner began to practice law in a solo capacity. She engaged in solo practice until the summer of 2002, when she completed the process of shutting down her practice. Petitioner then briefly moved to Denver in 2002 and was employed by a law firm there for approximately four weeks before issues she attributes to her brain injury resulted in her termination.

¶9 After her short stent in Denver, Petitioner returned to Tulsa, Oklahoma, but did not return to the practice of law. Over the next several years, as she continued her recovery, Petitioner was employed by the University of Tulsa College of Law, first as an adjunct professor and then as a visiting assistant professor. During that time, Petitioner published several papers in prominent law journals.

¶10 Petitioner testified that at the time of her suspension in 2009 for non-payment of dues she was not gainfully employed, but intended to continue pursuit of a career in academia and did not intend to return to the practice of law. She testified that she was embarrassed to ask her husband or family to pay for a law license she had not used since 2002 and was overwhelmed. Transcript of Proceedings before the Professional Responsibility Tribunal, pp. 86-88. Subsequent to her suspension, Petitioner became employed as a legal researcher with the firm of Frasier & Frasier, where she had been a partner for several years prior to her injury, and determined that she would like to return to the practice of law. Petitioner now seeks reinstatement.

¶11 Clear and convincing evidence in the record indicates that Petitioner's moral character is sufficient to meet the criteria for readmission. Letters from numerous individuals who are familiar with the Petitioner are part of the record, and all speak very positively as to Petitioner's moral character. Petitioner's current employer, with whom she also worked for years before her accident and who has kept in touch with her throughout her recovery, also testified positively as to her moral character at the PRT hearing. Transcript of Proceedings before the Professional Responsibility Tribunal, p. 28. The PRT found that Petitioner has demonstrated, by clear and convincing evidence, that she possesses good moral character sufficient to entitle her to be admitted to the Oklahoma Bar Association. This Court agrees.

¶12 There is abundant evidence in the record of Petitioner's current competency and learning in the law. Despite effectively ceasing to practice law in 2002, Petitioner continued to engage with the legal profession in an academic capacity, teaching for several years and publishing multiple articles in prominent journals. The Academic Associate Dean at the University of Tulsa College of Law during the time Petitioner was employed in a teaching and research capacity stated he believes her scholarship demonstrates a very high level of competency as a lawyer. Attorney J. L. Franks of the law firm Frasier & Frasier, Petitioner's current employer (and employer for many years before her injury), testified at the PRT hearing that he has worked more closely with her than he has any other attorney, and that she has worked with him to remain up to speed on recent workers' compensation changes, and that he intends to employ Petitioner as a full-time attorney and has full confidence in her abilities in the event she is reinstated. Additionally, the record indicates Petitioner attended several hours of CLE sessions in 2013 to supplement her legal knowledge and skillset.

¶13 Concerning her injury and recovery, Petitioner voluntarily submitted to a psychological examination. The results of the examination indicate that in all respects she has made an excellent recovery and there is no evidence of demonstrable impairment that would result in mental health-related concerns about her fitness to practice law. Hearing Exhibits, Joint Exhibit 1. J.L. Franks of Frasier & Frasier, who knew Petitioner well before her injury and with whom she works directly now, testified at the PRT hearing that there is no difference between where she was pre-accident and where she is now. It is the determination of this Court that clear and convincing evidence in the record indicates Petitioner possesses sufficient present competence for readmission to the bar.

¶14 This Court must also determine whether Petitioner has engaged in the practice of law since the date of her suspension on September 21, 2009. As discussed above, Petitioner testified she had already left the practice of law in 2002. Petitioner has also submitted all the affidavits required by Rule 11.1, RGDP, 5 O.S. 2011, Ch. 1, App. 1-A, and these affidavits indicate that she has not been engaged in the practice of law. Instead, Petitioner was involved in the legal field in an academic capacity, prior to being hired again by Frasier & Frasier. At the PRT hearing, J.L. Franks of Frasier & Frasier testified as to the care he and Petitioner have taken to make sure she has not engaged in the practice of law, and to make sure others understand she is not currently an attorney. Transcript of Proceedings before the Professional Responsibility Tribunal, pp. 22-24. It is the determination of this Court that clear and convincing evidence in the record indicates that Petitioner has not engaged in the practice of law since the date of her suspension.

¶15 Finally, this Court must determine whether Petitioner has complied with the requirements for reinstatement mandated by Rule 11, RGDP, 5 O.S. 2011, Ch. 1, App. 1-A. The record indicates Petitioner has met the procedural requirements of the rule. Petitioner has also already paid all outstanding dues and penalties, totaling $1,575, to the Oklahoma Bar Association. Petitioner's Exhibit 20. There is some discussion in the record that at the time of her suspension Petitioner failed to file within twenty days the affidavit required by Rule 9.1, RGDP, 5 O.S. 2011, Ch. 1, App. 1-A[2], indicating Petitioner provided notice of her suspension to all clients with legal business currently pending. Rule 9.1 requires proof of substantial compliance as a condition precedent to reinstatement. In In re Reinstatement of Elias, this Court determined that substantial compliance with this rule was achieved by termination of all client matters prior to an attorney's resignation, even if no affidavit was filed, because the affidavit speaks to taking those actions after resignation or suspension. 1988 OK 86, ¶¶13-14, 759 P.2d 1021. In this cause, the record indicates Petitioner had not practiced law or had clients for several years prior to her suspension. As this Court stated in Elias, "[t]he clear import of Rule 9.1 is to protect the interests of the clients of an attorney who is being subjected to the denial of his ability to practice law as a result of disciplinary measures." 1988 OK 86, ¶14. As Petitioner had no clients and had left the practice of law long before her suspension, this Court deems her to have substantially complied with Rule 9.1 despite her failure to file the affidavit.

CONCLUSION

¶16 Under the particular facts and circumstances reflected in the evidence introduced in this matter, this Court agrees with the recommendation of the PRT and determines that Petitioner has met the burden required for reinstatement, and hereby reinstates her to membership in the OBA. The OBA has filed an application to assess costs in the amount of $3,173.23. That application is granted and Petitioner is ordered to pay costs in the amount of $3,173.23 within ninety (90) days from the date this opinion becomes final.

PETITION FOR REINSTATEMENT GRANTED; COSTS IMPOSED

CONCUR: COLBERT, C.J., REIF, V.C.J., KAUGER, WATT, WINCHESTER, EDMONDSON, COMBS, and GURICH, JJ. 

NOT VOTING: TAYLOR, J. 

FOOTNOTES

[1] Neither Petitioner, nor her apparent counsel, Sheila J. Naifeh, have filed an entry of appearance as required by Rule 1.5 of the Oklahoma Supreme Court Rules, 12 O.S. Supp. 2013, Ch. 15, App. 1. This Court has previously stated that when no counsel enters a formal appearance on behalf of an appellate party this Court possesses the discretion to list as counsel the lawyer who has signed and submitted a brief or motion for that party. State x rel. Oklahoma Bd. of Medical Licensure and Supervision v. Pinaroc, 2002 OK 20, n. 1, 46 P.3d 114; Voiles v. Santa Fe Minerals, Inc., 1996 OK 13, n. 1, 911 P.2d 1205, 1207. This Court will exercise the same discretion in this bar matter. Accordingly, as Sheila J. Naifeh has signed and submitted a brief on behalf of Petitioner, she is listed as counsel for this matter.

[2] Rule 9.1, RGDP, 5 O.S. 2011, Ch. 1, App. 1-A, provides:

When the action of the Supreme Court becomes final, a lawyer who is disbarred or suspended, or who has resigned membership pending disciplinary proceedings, must notify all of the lawyer's clients having legal business then pending within twenty (20) days, by certified mail, of the lawyer's inability to represent them and the necessity for promptly retaining new counsel. If such lawyer is a member of, or associated with, a law firm or professional corporation, such notice shall be given to all clients of the firm or professional corporation, which have legal business then pending with respect to which the disbarred, suspended or resigned lawyer had substantial responsibility. The lawyer shall also file a formal withdrawal as counsel in all cases pending in any tribunal. The lawyer must file, within twenty (20) days, an affidavit with the Commission and with the Clerk of the Supreme Court stating that the lawyer has complied with the provisions of this Rule, together with a list of the clients so notified and a list of all other State and Federal courts and administrative agencies before which the lawyer is admitted to practice. Proof of substantial compliance by the lawyer with this Rule 9.1 shall be a condition precedent to any petition for reinstatement.

 





 Citationizer© Summary of Documents Citing This Document
Cite
 Name
 Level
 None Found.
Citationizer: Table of Authority
Cite
 Name
 Level
 Oklahoma Supreme Court Cases Cite
Name
Level 1988 OK 86, 759 P.2d 1021, Reinstatement of Elias, Matter of
Discussed at Length 2002 OK 20, 46 P.3d 114, 73 OBJ 907, STATE EX. REL. OKLAHOMA BD. OF MEDICAL LICENSURE & SUPERVISION v. PINAROC
Discussed 2003 OK 9, 65 P.3d 275, IN THE MATTER OF THE REINSTATEMENT OF SWANT
Discussed at Length 1996 OK 13, 911 P.2d 1205, 67 OBJ 529, Voiles v. Santa Fe Minerals, Inc.
Discussed 1996 OK 62, 919 P.2d 419, 67 OBJ 1695, In the Matter of the Reinstatement of Phillips
Discussed at Length 1996 OK 95, 925 P.2d 44, 67 OBJ 2786, In the Matter of the Reinstatement of Brown
Discussed 2009 OK 71, IN THE MATTER OF THE STRIKING OF NAMES OF MEMBERS OF THE OBA
Cited 1999 OK 72, 990 P.2d 861, 70 OBJ 2603, In the Matter of the Reinstatement of Turner
Discussed at Length 2000 OK 61, 9 P.3d 692, 71 OBJ 1913, In Re PEARSON
Discussed at Length