OSCN Found Document:IN THE MATTER OF THE REINSTATEMENT OF GOFORTH

 

 
 

 
 IN THE MATTER OF THE REINSTATEMENT OF GOFORTH
2019 OK 1
Case Number: SCBD-6633
Decided: 01/23/2019
IN THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2019 OK 1, __ __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

IN THE MATTER OF THE REINSTATEMENT OF CAROL ROSE GOFORTH TO MEMBERSHIP IN THE OKLAHOMA BAR ASSOCIATION AND TO THE ROLL OF ATTORNEYS

ORIGINAL PROCEEDING FOR RULE 11
BAR REINSTATEMENT

Â¶0 Petitioner, Carol Rose Goforth, filed a petition for reinstatement to membership in the Oklahoma Bar Association. The Oklahoma Bar Association does not oppose this reinstatement. The Professional Responsibility Tribunal unanimously recommended reinstatement. After our de novo review, we find the Petitioner should be reinstated.

PETITION FOR REINSTATEMENT IS GRANTED; 
PETITIONER IS ORDERED TO PAY COSTS

Carol Rose Goforth, Petitioner/Pro Se.

Stephen L. Sullins, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Respondent.

COMBS, J.:

Â¶1 On April 4, 2018, the Petitioner, Carol Rose Goforth, filed her Petition for Reinstatement requesting she be readmitted as a member of the Oklahoma Bar Association (OBA) pursuant to Rule 11, Rules Governing Disciplinary Proceedings, 5 O.S. 2011, Ch. 1, App. 1-A (RGDP). The record reflects the Petitioner graduated from the University of Arkansas School of Law in 1984 and was admitted to practice law in Oklahoma on October 18, 1984. She resided in Tulsa, Oklahoma where she worked for the law firm Doerner, Stuart, Saunders, Daniel and Anderson from October 18, 1984, through May 1, 1989. On May 15, 1989, she moved to Newark, New Jersey to accept a full-time teaching position at Seton Hall School of Law. She remained there until the summer of 1993 when she moved to West Fork, Arkansas to accept a full-time teaching position at the University Of Arkansas School Of Law in Fayetteville. She is currently a University Professor and teaches a range of business law, and practical transactional skills classes with a focus on corporations, unincorporated entities, securities regulation and transactional practice skills. The record indicates she has not been licensed to practice law in any other state.

Â¶2 On July 19, 1990, Petitioner was suspended from membership in the OBA for failure to pay membership dues for the year 1990.[1] One year later, this Court ordered her name stricken from the OBA membership rolls.[2] After filing her petition the Professional Responsibility Tribunal (PRT) held a hearing pursuant to Rule 6, RGDP. The Petitioner testified she regretted letting her bar license lapse but her career has been focused solely on teaching and she was even discouraged from retaining her license.[3] She explained the law school faculty was divided between the higher paid doctrinal course teachers and the licensed, sometimes adjunct teachers, who were regarded as clinical or practical teachers.[4] She was encouraged not to be regarded as a clinical or practical teacher and therefore she let her license lapse.[5] At the time, there was no benefit in keeping her law license and it appeared even detrimental to her career.[6] She also testified that she relied upon the letter sent to her on September 12, 1991, from the OBA.[7] The letter notified her that her name had been stricken from the roll of attorneys.[8] The last paragraph of the letter also stated the letter may be disregarded if she had no intention to practice law in Oklahoma in the future.[9]

Â¶3 The Petitioner's educational philosophy has changed over the years.[10] She now believes there is a real need to provide law students with transactional skills training. Her ultimate goal is to expand the legal education at the University of Arkansas School of Law. She intends to initiate a supervised law clinic for upper-level law students interested in working with entrepreneurial clients.[11] This will likely include accepting pro bono clients in the state of Arkansas.[12] She will need to be licensed in Arkansas in order to reach this goal.[13] After reinstatement of her Oklahoma license she will pursue her Arkansas license through reciprocity.[14] Her goal is not to practice law in Oklahoma nor will she practice law in Arkansas for profit.[15] Any clients taken will be on a pro bono basis in an academic setting.[16] Her desire for reinstatement lies purely with helping her students develop transactional skills to enhance their education.[17]

Â¶4 The PRT unanimously recommends the Petitioner be reinstated. It found by clear and convincing evidence the Petitioner had shown she possesses good moral character sufficient to be admitted to the OBA, she possesses competence in the learning of the law required for readmission, and she has not engaged in the unauthorized practice of law. The PRT also recommends the Petitioner should pay all fees and expenses of the investigation, including the cost of the original and one copy of the transcript as well as requiring her to obtain twelve hours of continuing legal education and payment of her bar dues for the year in which she is reinstated. It did not recommend the Petitioner take and successfully pass the regular bar examination given by the Board of Bar Examiners of the OBA. The Respondent, OBA, waived the filing of its answer brief and recommended the adoption of the PRT's findings.

STANDARD OF REVIEW

Â¶5 This Court has the non-delegable, constitutional responsibility to regulate both the practice and the ethics, licensure, and discipline of Oklahoma practitioners of the law. In re Reinstatement of Kerr, 2015 OK 9, Â¶6, 345 P.3d 1118. Our review of the record is made de novo, in which we conduct a non-deferential, full-scale examination of all relevant facts. State ex rel. Oklahoma Bar Association v. Hulett, 2008 OK 38, Â¶4, 183 P.3d 1014. In a proceeding involving no prior imposition of discipline for lawyer professional misconduct, the focus of our inquiry concerns 1) the present moral fitness of the applicant; 2) conduct subsequent to suspension as it relates to moral fitness and professional competence; 3) whether the attorney has engaged in the unauthorized practice of law; and 4) whether the attorney has complied with the rule-mandated requirements for reinstatement. In re Reinstatement of Christopher, 2014 OK 73, Â¶5, 330 P.3d 1221. The PRT's recommendations concerning these matters, while entitled to great weight, are advisory in character and the ultimate decision rests with this Court. In re Reinstatement of Pate, 2008 OK 24, Â¶3, 184 P.3d 528; In re Reinstatement of Floyd, 1989 OK 83, Â¶3, 775 P.2d 815. Rule 11.4, RGDP, provides an applicant seeking reinstatement will be required to present stronger proof of qualifications than one seeking admission for the first time. In addition, Rule 11.5, RGDP provides in pertinent part:

At the conclusion of the hearing held on the petition for reinstatement, the Trial Panel of the Professional Responsibility Tribunal shall file a report with the Supreme Court, together with the transcript of the hearing. Said report shall contain specific findings upon each of the following:

. . . .

(c) Whether or not the applicant possesses the competency and learning in the law required for admission to practice law in the State of Oklahoma, except that any applicant whose membership in the Association has been suspended or terminated for a period of five (5) years or longer, or who has been disbarred, shall be required to take and successfully pass the regular examination given by the Board of Bar Examiners of the Oklahoma Bar Association. Provided, however, before the applicant shall be required to take and pass the bar examination, he shall have a reasonable opportunity to show by clear and convincing evidence that, notwithstanding his long absence from the practice of law, he has continued to study and thus has kept himself informed as to current developments in the law sufficient to maintain his competency. If the Trial Panel finds that such evidence is insufficient to establish the applicant's competency and learning in the law, it must require the applicant to take and pass the regular bar examination before a finding as to his qualifications shall be made in his favor.

We have held this provision creates a rebuttable presumption that one who has been suspended for five years will not possess sufficient competency in the law to be reinstated, absent an extraordinary showing to that effect. In re Reinstatement of Farrant, 2004 OK 77, Â¶7, 104 P.3d 567. Each application for reinstatement to the OBA must be considered on its own merits and will fail or succeed on the evidence presented and the circumstances of the attorney's case. In re Reinstatement of Kerr, 2015 OK 9, Â¶19, 345 P.3d 1118.

ANALYSIS

I. Moral Fitness

Â¶6 Except for her suspension in 1990 for failure to pay dues, the record is silent as to any disciplinary actions taken against the Petitioner. Eight letters were admitted as evidence which strongly supported a finding that Petitioner possessed good moral character.[18] These letters were written by various deans and professors of the universities where she has worked as well as members of the bar. Testimony at the hearing also supported Petitioner's good moral character.[19] No contrary evidence was presented. The PRT found Petitioner had shown by clear and convincing evidence she possessed the good moral character to be readmitted to the OBA. After an examination of the record, we agree with this finding.

II. Professional Competence Sufficient for Reinstatement

Â¶7 Rule 11.5, RGDP, requires a petitioner for reinstatement to show they possess the competency and learning in the law required for admission. If they have been suspended or terminated for more than 5 years, there is a rebuttable presumption they will be required to retake the regular bar examination. In determining competency, our precedent has placed an emphasis on law-related work history following suspension. We have also considered other ways a petitioner has kept abreast of the law including the completion of continuing legal education courses and the reading of bar journals.

Â¶8 In In re Reinstatement of Bodnar, this Court noted some of our previous opinions had rejected a finding of competency when the petitioner's preparation had consisted mainly of completing only twelve to twenty-four hours of continuing legal education courses prior to petitioning for reinstatement. 2016 OK 12, Â¶23, 367 P.3d 916. We held "if practicing attorneys must complete twelve hours a year, taking one class and reading the Oklahoma Bar Journal for three months is certainly insufficient to meet the burden for showing competency." Id. Our prior precedent addressed in the opinion included, In re Reinstatement of Turner, 1999 OK 72, 990 P.2d 861, and In re Reinstatement of Hardin, 1996 OK 115, 927 P.2d 545.

Â¶9 In Turner, a lawyer petitioned for reinstatement four years after his name was removed from the roll of attorneys for failure to pay his bar dues and failure to maintain his continuing legal education requirements. Turner, 1999 OK 72, Â¶2. Mr. Turner had completed twenty-four hours of continuing legal education three years prior to filing his petition. Id. Â¶10. He also contended he had read the Oklahoma Bar Journal, as well as other legal publications. Id. We held, Mr. Turner failed to prove by clear-and-convincing evidence he possessed the requisite legal skills for reinstatement. Id. Â¶20. This Court also refused to give any weight to his work experience after his suspension because Mr. Turner had been blatantly practicing law without a license. Id.

Â¶10 In Hardin, a lawyer resigned from the Oklahoma Bar Association in 1990 pending disciplinary proceedings. Hardin, 1996 OK 115, Â¶1. In 1995, he petitioned for reinstatement. Mr. Hardin presented evidence to support his competency in the law. His evidence consisted of reading the Oklahoma Bar Journal and taking eighteen hours of continuing legal education courses, all in the year preceding the filing of his petition. Id. Â¶6. We held he failed to prove by clear and convincing evidence he now possessed the requisite legal skills to be reinstated. Id. Â¶12.

Â¶11 By contrast, other opinions have given great weight to a petitioner's work experience and approved reinstatement even though the petitioner had not completed many hours of continuing legal education. In In re Reinstatement of Jones, a seasoned lawyer resigned in 1997 during disciplinary proceedings and petitioned for reinstatement in 2004. 2006 OK 33, Â¶Â¶ 1, 6, 142 P.3d 380. After her resignation, she took various non-legal jobs. Id. Â¶11. The record reflects she completed almost twenty hours of continuing legal education the year prior to filing her petition. Id. Â¶12; Brief in Support of Reinstatement, p. 7 (filed December 12, 2005; SCBD 4961). She also read the Oklahoma Bar Journal over the two years before filing her petition. Id. This Court noted over the "past year" she had received hands-on supervised legal experience. Jones, 2006 OK 33, Â¶Â¶11-12. We held, she had shown her competence and learning in the law to qualify her for readmission without retaking the bar examination. Id. Â¶12.

Â¶12 In another case, a lengthy absence from the practice of law did not prevent reinstatement when the lawyer continued taking continued legal education courses and their non-legal work experience was considered. In In re Reinstatement of Gill, a lawyer was licensed to practice law in Oklahoma in 1979 and was later suspended for failure to pay dues in 1983. 2016 OK 61, Â¶Â¶ 1, 2, 376 P.3d 200. She was also licensed in 1978 to practice law in California and did so from 1981 through 1999. Gill, 2016 OK 61, Â¶1. From 2001 through 2013, she worked for an urban land use planning company. Id. Â¶8. She placed her California bar license on inactive status in 2002, but continued to take continuing legal education courses while working for the company. Id. Â¶7-8. She was not practicing law for the company, however, her duties included drafting and managing contracts, assisting the management of the company's legal teams and performing work concerning environmental compliance. Id. Â¶8. In 2014, she moved back to Oklahoma and performed clerical and administrative tasks as well as supervised legal research for a law firm. Id. Â¶11-12. The following year she petitioned for reinstatement. Id. Â¶1. Since 2015 she had also completed twenty-four hours of continuing legal education. Id. Â¶14. The PRT recommended reinstatement and this Court agreed finding she possessed the competency and learning in the law required for reinstatement without re-taking the bar examination. Id. Â¶22.

Â¶13 In the present matter, the Petitioner has contributed to her legal community in many ways including serving as the Arkansas Liaison to the Corporate Laws Committee of the American Bar Association (ABA) and serving as an Official Observer to the Uniform Limited Liability Company Act Draft Committee of the Uniform Law Commission.[20] Since leaving Oklahoma in 1989, she has been continuously engaged in the full-time teaching of law at ABA accredited law schools.[21] The Petitioner was promoted to University Professor at the University of Arkansas School of Law in 2012.[22] Prior to her promotion, she worked as a professor of law, associate dean and acting dean at the university.[23] During this time, the Petitioner also wrote three books/chapters and forty-four distinct journal articles on a variety of legal topics.[24] In addition, she attended numerous conferences and presentations throughout the years but she did not keep track of how many hours of continuing legal education credits she would have been eligible to receive.[25]

Â¶14 Over the entirety of the Petitioner's time teaching there was only one year in which she did not teach at least six credit hours at an ABA accredited law school.[26] Her teaching load for most years was between eleven and thirteen credit hours.[27] Under Rule 7 of the Rules for Mandatory Continuing Legal Education (MCLE), six hours of continuing legal education credit may be earned for each semester hour taught at an ABA accredited law school. Rule 7, Reg. 3.4, MCLE, 5 O.S. 2011, Ch. 1, App. 1-B. Her regular teaching schedule therefore amounted to an equivalent continuing legal education of between sixty-six to seventy-eight hours each year. The Petitioner's continuing legal education equivalency clearly exceeds the annually required twelve hours for licensed lawyers in Oklahoma.

Â¶15 The PRT found the Petitioner possessed the required competence and learning of the law and recommended her reinstatement. We agree with this recommendation. The Petitioner's extensive contributions and work experience qualify her to be readmitted to the practice of law in Oklahoma without the necessity of re-taking the regular bar examination.

III. Unauthorized Practice of Law

Â¶16 Rule 11.1, RGDP provides a mechanism for determining whether a petitioner has engaged in the unauthorized practice of law. Paragraph (a) of the rule requires the petitioner to submit an affidavit, attached to the petition for reinstatement, from each court clerk of the several counties in which he or she resided after suspension or termination of the right to practice law, establishing the petitioner has not practiced law in their respective courts during that period. Petitioner submitted her affidavit wherein she attests to not having engaged in the unauthorized practice of law since her suspension.[28] The affidavit also states she has contacted the counties in New Jersey and in Arkansas where she resided but they are unable to provide an affidavit affirming she has not practiced law in those counties because they have no information concerning who has appeared as counsel.[29] She provided an affidavit from Tulsa County, Oklahoma wherein the Court Clerk attests the Petitioner has not appeared before any judge in the county since her suspension.[30] She also provided a letter from the Arkansas Supreme Court confirming she has never been reported to the Unauthorized Practice of Law Committee in that State.[31] Rhonda Langley, the Investigator for the General Counsel's Office of the Oklahoma Bar Association, testified at the June 19, 2018, PRT hearing. She explained her process for determining whether a petitioner has engaged in the unauthorized practice of law.[32] She found no cause for concern.[33]

Â¶17 Petitioner attested to all her activities since her suspension.[34] Her activities included being asked to participate in a corporation that was in the process of being formed. She was offered the title of Vice President of Law and Policy. The position was not to be compensated and her primary role was to advocate for responsible regulation in the crypto currency community. She confirmed that her role would be outside of the corporation's legal department and she was to consult with the corporation's counsel when requested. In a May 10, 2018, letter to the bar investigator, she indicated she was not comfortable in doing all the duties the corporation was wanting her to do without having a license to practice law and this concern had been one of her earlier reasons for pursuing reinstatement.[35] However, the letter also informed the investigator that this business has now folded and therefore was no longer a driving reason for pursuing reinstatement. Since 1998, she has also performed pro bono work for a local Legal Services office.[36] Her work is uncompensated and she has no interaction with the office's clients. Her work consists of providing research and consultation to the licensed attorneys who work there.

Â¶18 The PRT's report found the Petitioner had proven by clear and convincing evidence she has not engaged in the unauthorized practice of law nor has she appeared in court as an attorney of record for any party or in any litigation. We find no evidence to the contrary.

MCLE, BAR DUES, AND APPLICATION TO ASSESS COSTS

Â¶19 An affidavit from the OBA's MCLE Administrator states the Petitioner does not owe any MCLE credit or any MCLE fees.[37] An affidavit from the OBA's Director of Administration states the Petitioner will owe only her current membership dues of two hundred and seventy-five dollars ($275.00) for the year of her reinstatement.[38] The OBA filed an Application to Assess Costs, pursuant to Rule 11.1 (c), RGDP. The application requests the Petitioner pay, on a date certain, the amount of two hundred and thirty-two dollars and ninety-three cents ($232.93) for the expenses related to this investigation. It indicates the Petitioner has already been invoiced directly for the costs of the transcript of the proceedings. The record also reflects no payments have ever been expended from the Clients' Security Fund on the Petitioner's behalf.

CONCLUSION

Â¶20 The Petitioner has complied with the rule-mandated requirements for reinstatement. We hold the Petitioner has met her burden of proof and established by clear and convincing evidence her eligibility for reinstatement without examination. Within thirty days of the date of this opinion Petitioner shall pay the costs incurred in this proceeding in the amount of two hundred and thirty-two dollars and ninety-three cents ($232.93) as required by Rule 11.1 (c), RGDP. She shall also be required to pay the current year's (2019) OBA membership dues. Upon payment of the costs assessed and her 2019 membership dues, the Petitioner shall be reinstated to membership in the Oklahoma Bar Association and her name shall be added to the roll of attorneys. Following reinstatement she shall complete mandatory continuing legal education in the same manner as other members of the bar.

PETITION FOR REINSTATEMENT IS GRANTED; 
PETITIONER IS ORDERED TO PAY COSTS

Â¶21 ALL JUSTICES CONCUR

FOOTNOTES

[1]Ex. 27, Jt. Hearing Exhibits, for the PRT hearing held June 19, 2018; Supreme Court Order S.C.B.D. 3693 (July 19, 1990).

[2]Ex. 28, Jt. Hearing Exhibits, for the PRT hearing held June 19, 2018; Supreme Court Order S.C.B.D. 3693 (September 10, 1991).

[3]Tr. at 64, 57-58, In re Reinstatement of: Carol Rose Goforth (SCBD #6633; June 19, 2018).

[4]Id. at 57-58.

[5]Id. at 58.

[6]Id.

[7]Id. at 57.

[8]Ex. 29, Jt. Hearing Exhibits, for the PRT hearing held June 19, 2018.

[9]Id.

[10]Tr. at 58, In re Reinstatement of: Carol Rose Goforth (SCBD #6633; June 19, 2018).

[11]Petitioner's Brief in Support of Reinstatement, filed November 20, 2018, p.5.

[12]Id.

[13]Tr. at 68, In re Reinstatement of: Carol Rose Goforth (SCBD #6633; June 19, 2018).

[14]Id. at 59-60.

[15]Id. at 63, 66.

[16]Id. at 63; Report of the Trial Panel, filed November 2, 2018, p.2.

[17]Tr. at 62, 68-69, In re Reinstatement of: Carol Rose Goforth (SCBD #6633; June 19, 2018); Petitioner's Brief in Support of Reinstatement, filed November 20, 2018, pp.9-10.

[18]Exs. 1-8, Jt. Hearing Exhibits, for the PRT hearing held June 19, 2018.

[19]Tr. at 11, 12, 18, 21-22, 24, 39, In re Reinstatement of: Carol Rose Goforth (SCBD #6633; June 19, 2018).

[20]Petition for Reinstatement, filed April 4, 2018, Ex. C., Affidavit, p.7.

[21]Id., Ex. A., Affidavit, p.1.

[22]Id., Ex. C., Affidavit, p.1.

[23]Id.

[24]Id. at pp.3-6.

[25]Petitioner's Brief in Support of Reinstatement, filed November 20, 2018, p.12.

[26]Id.

[27]Id.

[28]Ex. 16, Jt. Hearing Exhibits, for the PRT hearing held June 19, 2018.

[29]Id.

[30]Ex. 19, Jt. Hearing Exhibits, for the PRT hearing held June 19, 2018.

[31]Ex. 20, Jt. Hearing Exhibits, for the PRT hearing held June 19, 2018.

[32]Tr. at 75, In re Reinstatement of: Carol Rose Goforth (SCBD #6633; June 19, 2018).

[33]Id. at 79.

[34]Ex. 17, Jt. Hearing Exhibits, for the PRT hearing held June 19, 2018.

[35]Ex. 18, Jt. Hearing Exhibits, for the PRT hearing held June 19, 2018.

[36] Ex. 17, Jt. Hearing Exhibits, for the PRT hearing held June 19, 2018.

[37] Ex. 9, Jt. Hearing Exhibits, for the PRT hearing held June 19, 2018.

[38] Ex. 10, Jt. Hearing Exhibits, for the PRT hearing held June 19, 2018.