IN THE MATTER OF THE REINSTATEMENT OF WALKER2022 OK 66Case Number: SCBD-7167Decided: 06/28/2022THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2022 OK 66, __ P.3d __

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

 

 

IN THE MATTER OF THE REINSTATEMENT OF: KELLY J. WALKER TO MEMBERSHIP IN THE OKLAHOMA BAR ASSOCIATION AND TO THE ROLL OF ATTORNEYS.

ORIGINAL PROCEEDING FOR RULE 11 REINSTATEMENT

¶0 Petitioner, Kelly J. Walker, filed a petition for reinstatement to membership in the Oklahoma Bar Association. The Professional Responsibility Tribunal unanimously recommended Petitioner's conditional reinstatement. The Oklahoma Bar Association does not oppose Petitioner's reinstatement. Upon review, we hold Petitioner has failed to demonstrate the necessary competence and learning in the law for reinstatement. Accordingly, Petitioner's reinstatement is conditionally granted upon her passage of the Oklahoma Bar Examination and payment of all outstanding dues and fees to the Oklahoma Bar Association.

REINSTATEMENT GRANTED UPON SUCCESSFUL COMPLETION OF
THE CONDITIONS SET OUT IN THIS OPINION;
PETITIONER ORDERED TO PAY COSTS.

Kelly J. Walker, Denver, Colorado, Petitioner/Pro se.

Peter Haddock, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Respondent.

ROWE, J.:

I. BACKGROUND

¶1 Petitioner, Kelly J. Walker, seeks reinstatement as a member of the Oklahoma Bar Association ("OBA") pursuant to Rule 11, Rules Governing Disciplinary Proceedings ("RGDP"), 5 O.S.2021 ch. 1, app. 1-A. Petitioner graduated from the University of Oklahoma College of Law in December 1996. Petitioner passed the Oklahoma Bar Examination in February 1997. She was admitted to the OBA on April 25, 1997.

¶2 Petitioner practiced continuously from 1997 to 2004. During 2004 and 2005, Petitioner worked at the law firm of Mark Hammons. According to her testimony, in late 2005, Petitioner began experiencing episodes of paranoia and other behavior that was not conducive to a pleasant work environment. These episodes ultimately led to her dismissal.

¶3 The loss of her job prompted Petitioner to seek treatment with a psychiatrist, who diagnosed her with Bipolar Disorder and placed her on medication. The medications controlled her symptoms to a degree but not well enough for her to return to work. In 2007, Petitioner moved to Forth Worth with her husband where she applied for and received Social Security disability benefits.

¶4 In 2009, the OBA notified Petitioner that she was not current on her continuing legal education requirements and bar dues for the previous two years. In response, Petitioner contacted the OBA in June 2009 and requested to resign her membership. Her resignation was accepted on June 25, 2009.

¶5 In 2018, Petitioner separated from her husband. Their divorce was still pending at the time of the trial panel hearing. Petitioner blames the pending divorce for her estrangement from her three adult children.

¶6 Petitioner's relationship with her youngest daughter, Blair, became particularly acrimonious. In July 2019, Blair filed a Petition for Protective Order against Petitioner. In the petition, Blair alleged that Petitioner made several unwelcome visits to her home and engaged in disruptive behavior, including banging on her front door and yelling. Blair also alleged that Petitioner's medical condition made her dangerous. Blair referenced one occasion where Petitioner allegedly threw a wooden hanger at her. Petitioner claims that any visits she made to Blair's home were for legitimate reasons, and she denies the allegation that she poses a threat to Blair or any member of her family.

¶7 On July 12, 2019, the District Court of Tulsa County entered an emergency order of protection against Petitioner and ordered her to appear for a hearing on the petition. Petitioner failed to appear at the hearing because she was living in Colorado at the time and lacked the funds to travel back to Oklahoma. On October 1, 2019, the District Court entered a final order of protection against Petitioner, which remains in effect until October 2024.

¶8 From July 2021 to October 2021, Petitioner spent approximately three months working as a public finance paralegal at Ballard Spahr LLP. Petitioner indicated that working as a paralegal made her realize she was capable of returning to practice. On November 4, 2021, Petitioner filed her Petition for Reinstatement. On December 14, 2021, Petitioner filed a motion in the District Court of Tulsa County to vacate the protective order entered against her. Between January 12 and January 17, 2022, Petitioner completed twenty-four (24) hours of online continuing legal education ("CLE") credits.

¶9 On January 25, 2022, the trial panel held a hearing on the Petition for Reinstatement. Petitioner testified at the hearing and presented testimony from six character witnesses. The OBA presented testimony from its investigator, Mark Stoner.

¶10 The trial panel found by clear and convincing evidence that Petitioner possesses good moral character and has not engaged in the unauthorized practice of law. The trial panel determined, however, that Petitioner failed to demonstrate the necessary competency and learning in the law for reinstatement. The trial panel recommended that Petitioner's reinstatement be conditionally granted upon satisfaction of the following terms: (1) termination of the protection order against her either by its terms or dismissal; (2) passage of the Oklahoma Bar Examination; (3) payment of any outstanding dues and penalties; and (4) completion and reporting of twelve (12) CLE credits for the year in which she is reinstated.

II. STANDARD OF REVIEW

¶11 This court possesses a nondelegable, constitutional obligation to regulate the practice of law as well as the ethics, licensure, and discipline of Oklahoma practitioners. In re Reinstatement of Rickey, 2019 OK 36442 P.3d 571In re Reinstatement of Kerr, 2015 OK 9345 P.3d 1118Rickey, 2019 OK 36de novo. Id.

¶12 Applicants seeking readmission bear the burden of proving by clear and convincing evidence that, if readmitted, their conduct will conform to the high standards required of members of the bar. Rule 11.4, RGDP. Applicants seeking reinstatement must present stronger proof of qualifications than those seeking admission for the first time. Id. In instances such as this one, which involve no prior imposition of discipline, we focus our inquiry on four primary questions: (1) whether the applicant possesses good moral character, (2) whether she has engaged in any unauthorized practice of law in Oklahoma, (3) whether she has demonstrated sufficient competency to practice law, and (4) whether she has complied with any other requirements for reinstatement. See Rickey, 2019 OK 36In re Reinstatement of Christopher, 2014 OK 73330 P.3d 1221see also Rule 11.5, RGDP .

III. DISCUSSION

¶13 We analyze Petitioner's request for reinstatement in relation to the four questions posed above regarding her present moral fitness, instances of unauthorized practice, her professional competence, and her compliance with other requirements for reinstatement.

A. Moral Fitness.

¶14 Despite falling behind on her annual dues and CLE requirements, Petitioner has never faced disciplinary action by the OBA. Petitioner practiced for approximately eight years after graduating from law school and maintained good standing with the OBA until her resignation in 2009. Petitioner presented testimony from six character witness at hearing: Mark Hammons, an Oklahoma attorney and Petitioner's former employer; Elaine Gampel, a friend for whom she worked as a personal shopper; Stephanie Jetton, an acquaintance who Petitioner hired to document the contents of the marital home during her divorce; Stacie Gardner, a realtor and friend from college; Lesley Hofberger, Petitioner's mother; and Daniel Greenberg, Petitioner's romantic partner.

¶15 Each of Petitioner's witnesses testified that they believe Petitioner possesses the requisite moral character to return to practice. The OBA's investigator, Kurt Stoner, testified that Petitioner was forthcoming and cooperative with his investigation. Stoner further testified that he did not find anything during the course of his investigation to indicate Petitioner lacked good moral character.

¶16 As noted by the trial panel, the only question as to Petitioner's moral character stems from the outstanding protective order against her. Petitioner denies the allegations in the Petition for Protective Order and maintains that the allegations did not warrant the issuance of protective order. At the time of the hearing before the trial panel, Petitioner had filed a motion in the Tulsa County District Court seeking to vacate the protective order or grant a new trial based on new evidence obtained through discovery in her divorce proceedings. Petitioner, however, did not request a continuance of the trial panel hearing so that her motion to vacate the protective order could be resolved.

¶17 Additionally, there was very little testimony at the hearing regarding the circumstances surrounding the issuance of the protective order. Hofberger testified that she witnessed text messages from Blair to Petitioner that were rude and disrespectful. Hofberger also generally affirmed Petitioner's explanation of the events that were referenced in the Petition for Protective Order. Investigator Stoner chose not to interview Blair to gain her account of these events or what prompted her to seek the protective order. When the trial panel questioned that decision, Stoner explained that, based on his investigation up to that point, he did not think it would be productive and he was relatively confident that Petitioner possessed the good moral character necessary for reinstatement.

¶18 On review, we find clear and convincing evidence that Petitioner possesses the good moral character necessary for reinstatement. While the allegations in the Petition for Protective Order are troubling, they do not appear to reflect the general character of Petitioner. Nothing in the record reflects a tendency on her part toward violence or harassment. Several friends, colleagues, and acquaintances were willing to testify to her trustworthiness and general character. Furthermore, she does not have a history of prior discipline or unethical behavior.

B. Unauthorized Practice of Law.

¶19 During his investigation, Stoner reviewed a number of state and federal dockets for evidence that Petitioner engaged in the unauthorized practice of law. Stoner testified that his investigation revealed no evidence that Petitioner had engaged in the unauthorized practice of law in Oklahoma since her resignation.

¶20 Rule 11.1(a)(2), RGDP, requires that an applicant seeking readmission submit affidavits from the court clerks in each county in which the applicant has resided since her resignation, establishing that the applicant has not engaged in the unauthorized practice of law in their respective courts. Petitioner submitted affidavits from the court clerks of Tulsa County, Garfield County, and Mayes County, all of which state that a search of their respective court records revealed no evidence that Petitioner had practiced law in those counties since her resignation. Based on the foregoing, we find by clear and convincing evidence that Petitioner has not engaged in the unauthorized practice of law in Oklahoma.

C. Professional Competence.

¶21 Pursuant to Rule 11.5(c), an applicant for reinstatement is required to demonstrate sufficient competency and learning in the law. If an applicant's license to practice has been inactive for five years or more, there is a rebuttable presumption that she will be required to take and pass the bar examination to demonstrate competency. Rule 11.5(c), RGDP; In re Reinstatement of Rickey, 2019 OK 36442 P.3d 571In re Reinstatement of Duke, 2016 OK 58382 P.3d 501

¶22 Petitioner resigned from the Oklahoma Bar Association on June 25, 2009. However, Petitioner has not actively practiced law since 2005, making her actual absence from practice approximately seventeen years. Additionally, Petitioner failed to complete mandatory CLE requirements in 2007 and 2008, meaning she was without any formal continued education in the law for approximately fifteen years.

¶23 Petitioner asserts she has maintained her competency and learning in the law during her absence in a variety of ways. Specifically, Petitioner earned twenty-four hours of online CLE credits a few months after filing her Petition for Reinstatement. Petitioner also asserts that she gained exposure to different areas of the law while working as a paralegal at Ballard Spahr LLP. Finally, Petitioner testified that she would occasionally read the bar journal and keep abreast of prominent legal issues in the news.

¶24 On review, we find that Petitioner has not established that she possesses the necessary competency and learning in the law to be reinstated. Twenty-four hours of continuing legal education, along with three months of work as a paralegal and following legal issues in the news, is not sufficient to demonstrate one's competency to practice law, particularly when one has been out of practice for more than a decade and when reinstatement requires stronger proof of qualifications than is necessary for one seeking admission for the first time. Rule 11.4, RGDP; See Rickey, 2019 OK 36

¶25 In In re Reinstatement of Duke, 2016 OK 58382 P.3d 501In re Reinstatement of Farrant, 2004 OK 77104 P.3d 567

D. Other Requirements for Reinstatement.

¶26 According to the affidavit submitted by Craig Combs, Director of Administration for the Oklahoma Bar Association, at the time of her resignation, Petitioner owed dues of $275 for 2009 as well as $100 in late fees for failing to pay her dues on time. Petitioner testified that she is prepared to pay the $375 in dues and late fees upon reinstatement. According to the affidavit submitted by Beverly Petry Lewis, MCLE Administrator for the Oklahoma Bar Association, Petitioner will owe $900 in MCLE fees upon reinstatement, which includes a $200 late fee for failing to timely complete her MCLE requirements in 2007; a $200 late fee for 2008; and a $500 reinstatement fee. Petitioner testified that she is prepared to pay the $900 in fees upon reinstatement.

IV. CONCLUSION

¶27 Petitioner has demonstrated by clear and convincing evidence that she possesses good moral character and that she has not engaged in the unauthorized practice of law. Petitioner has not, however, demonstrated that she possesses the competence and learning in the law necessary for reinstatement. Accordingly, Petitioner's reinstatement is granted upon completion of the following conditions: (1) Petitioner must take and pass the Oklahoma Bar Examination; (2) Petitioner must pay $375 in bar association dues and late fees; (3) Petitioner must pay $900 in MCLE fees. Additionally, upon reinstatement, Petitioner is required to pay dues and satisfy MCLE requirements for the calendar year in which she is admitted.

¶28 On February 28, 2022, the OBA filed an application to assess the costs of the reinstatement proceedings, in the amount of $1,636.73, to Petitioner. Petitioner did not file an objection to the application. Pursuant to Rule 11.1(c), RGDP, an applicant for reinstatement is responsible for the expense involved in investigating and processing her application. Petitioner is hereby ordered to pay costs in the amount of $1,636.73 within ninety days of the effective date of this opinion.

REINSTATEMENT GRANTED UPON SUCCESSFUL COMPLETION OF THE
CONDITIONS SET OUT IN THIS OPINION;
PETITIONER ORDERED TO PAY COSTS.

Darby, C.J., Kauger, Winchester, Edmondson, Rowe, and Kuehn, JJ., concur.

Kane, V.C.J., Combs, and Gurich, JJ., dissent.